Otis Lee MINNIX, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12134.

Criminal Court of Appeals of Oklahoma.

March 9, 1955.

Rehearing Denied April 27, 1955.

Appeal from the Court of Common Pleas of Oklahoma County; Evert Crismore, Judge.

Otis Lee Minnix was convicted for the crime of aggravated assault, sentenced to 90 days in jail, and appeals. Modified and affirmed.

. Eagin & Eagin, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

The plaintiff in error, Otis Lee Minnix, who will hereinafter be referred to as defendant, was jointly charged with Sam Winfield Baker with the crime of aggravated assault, by information filed in the court of common pleas of Oklahoma County. Baker fled and could not be found when the case came on for trial. The jury found the defendant guilty, but being unable to agree upon the penalty, left that to the court, who assessed punishment at ninety days imprisonment in the county jail, and to pay the costs.

The charging part of the information reads:

"On the 3rd day of April, A.D. 1954, in Oklahoma County State of Oklahoma, Otis Lee Minnix and Sam Winfield Baker whose more full and correct names are to your informant unknown, then and there being, did then and there wilfully, unlawfully and wrongfully commit the crime of Aggravated Assault in the manner and form as follows, to-wit:

"That is to say, the said defendants, in the county and state aforesaid, and on the day and year aforesaid, then and there being, did then and there without justifiable or excusable cause, and while acting conjointly and together, wilfully, unlawfully and wrongfully strike, beat, bruise and otherwise maltreat one James Defee, and inflict serious bodily injury to the head and body of the said James Defee; contrary to the form of the statutes in such cases made and pro-

vided, and against the peace and dignity of the State of Oklahoma."

Prior to 1951 there was no crime known to the laws of Oklahoma as "aggravated assault". Merchant v. State, 12 Okl.Cr. 360, 157 P. 272. But the 1951 Legislature, S.L. 1951, ch. 20, p. 59, Senate Bill No. 51, enacted the statute under which the above information was filed, and being Section 646 of Title 21, O.S.1951. No historical note appears under the statutory provision in Title 21, O.S.1951.

However, both counsel for the defendant and the Attorney General assert that the above provision was copied from the Texas statute covering aggravated assault. We have examined Title 15, Article 1147 of Vernon's Texas Penal Code, and so far as applying to an assault is concerned, our statute is in the exact language of the Texas statute, except that the Texas statute recites some nine circumstances under which an "assault or battery" becomes aggravated.[1]

Although our provision is so headed (the wording being in the plural) as to indicate a definition that would cover various circumstances under which an assault would be deemed "aggravated", only one circumstance is actually set out, as will be noted from Senate Bill No. 51, which we quote in full:

"An Act relating to the crime of aggravated assault; defining such offense; fixing punishments therefor; and declaring an emergency.

"Be it Enacted by the People of the State of Oklahoma:

"Section 1. Aggravated Assault. An assault becomes aggravated when committed under any of the following circumstances:

"When a serious bodily injury is inflicted upon the person assaulted.

"Section 2. Punishment. An aggravated assault, shall be punished by imprisonment in a county jail not exceeding one (1) year, or by fine of not more than Five Hundred Dollars ($500.00), or both such fine and imprisonment.

"Approved May 26, 1951. Emergency."

By comparing the above statute with the Texas statute in question it is at once noticeable that whereas the Texas statute contains the words "An *assault* or *battery* becomes aggravated", etc., the Oklahoma statute simply provides: "An *assault* becomes aggravated when committed under any of the following circumstances: *When a serious bodily injury is inflicted upon the person assaulted.*" (Emphasis supplied.)

It is at once apparent that the legislative body in defining an aggravated assault actually defined an aggravated battery, in light of the universally accepted meaning of the words in question. That is to say, there is a well defined difference between an assault and a battery. Section 641 of Title 21, O.S.1951 provides: "An assault is any wilful and unlawful attempt or offer with force or violence to do a corporal hurt to another"; while Section 642 of the same

[1] "An assault or battery becomes aggravated when committed under any of the following circumstances:

"(1) When committed upon an officer in the lawful discharge of the duties of his office, if it was known or declared to the offender that the person assaulted was an officer discharging an official duty.

"(2) When committed in a Court of justice, or in any place of religious worship, or in any place where persons are assembled for the purpose of innocent amusement.

"(3) When the person committing the offense goes into the house of a private family and is there guilty of an assault and battery.

"(4) When committed by a person of robust health or strength upon one who is aged or decrepit.

"(5) When the instrument or means used is such as inflicts disgrace upon the person assaulted, as an assault or battery with a whip or cowhide.

"(6) When a serious bodily injury is inflicted upon the person assaulted.

"(7) When committed with deadly weapons under circumstances not amounting to an intent to murder or maim.

"(8) When committed with premeditated design, and by the use of means calculated to inflict great bodily injury.

"(9) When committed by an adult male upon the person of a female or child or by an adult female upon the person of a child."

Title defines a battery as follows: "A battery is any wilful and unlawful use of force or violence upon the person of another."

██ A clear illustration of what constitutes an assault is set out in Black's Law Dictionary, where it is said: "An attempt or offer to beat another without touching him; as if one lifts up his cane or his fist in a threatening manner at another; or strikes at him, but misses him"; and where the same work defines a battery as: "Any unlawful beating, or other wrongful physical violence or constraint, inflicted on a human being without his consent." See also Words and Phrases; Vol. 4, Am.Jur., Assault and Battery; 6 C.J.S., Assault and Battery.

The information in the within case in the charging part recites facts that ordinarily would be said to constitute a battery by reason of the touching. The descriptive label of the information charges a higher grade of assault. It might be argued that there being no statutory provision in Oklahoma covering an aggravated battery, which if there was would also necessarily include an assault, though an assault does not necessarily include a battery, Parks v. State, 14 Okl.Cr. 413, 171 P. 1129, that the demurrer to the information interposed by the defendant should have been sustained.

 But an ordinary situation is not presented in this case. Although an anomalous state of facts is presented by reason of an aggravated assault being by definition in Section 646 of Title 21 O.S.1951 adopting a definition that by Section 642 of the same Title, would constitute a battery, it is within the province of the legislative body to define words appearing in legislative acts, and where an act passed by the legislature embodies a definition, it is binding on the courts. Traxler v. State, 96 Okl.Cr. 231, 251 P.2d 815. And as stated in 50 Am.Jur., Statutes, § 262: "Indeed, a statutory definition supersedes the commonly accepted, dictionary, or judicial definition. Where a statute contains its own definition of a term used therein, the term may not be given the meaning in which it is employed in another statute, although the two may be in pari materia".

The problem, then, in this case, is to determine whether or not the facts proven were sufficient to sustain defendant's conviction of aggravated assault as defined by the legislative act in question.

At this point we would point out that in the within case the evidence developed that the prosecuting witness, James Defee, only a day out of the hospital, was driving the family car in Oklahoma City, accompanied by his four-year-old daughter, to pick up the wife and mother at her place of employment. It was around 4 o'clock in the afternoon, at Grand and Broadway. Defee noticed a car stalled at the intersection, and as he got abreast of this car a red light came on and he stopped his car. Then he noticed the defendant and another person, the absent co-defendant, approaching his car and cursing him. One of the parties, Sam Winfield Baker, appeared intoxicated, and wanted to know why Defee did not push their car. Defee told the parties that his bumper was broken, but Baker hit Defee with his fist and the defendant Minnix commenced to hit him over the face and body with his fists and split Defee's upper and lower lips, and about that time some one drove up and commenced to push the Minnix car, Baker having gotten into it, so that the defendant left and Defee went to the police station and filed a charge against Minnix and Baker, he having gotten their car tag number. They were later apprehended. Defee went to the hospital to have his lips sewed up, and for an examination.

Dr. Gilbert L. Hyroop testified that he specialized in plastic surgery; that on the night of April 23, 1954 he saw the prosecuting witness Defee at Mercy Hospital, and, said he:

"And, as I recall, he had some contusions on his face and laceration of the lip, and I did a surgical deprivement, under a local anesthesia, and sutured the lip in layers.

"Q. In layers? A. Yes.

"Q. Will you explain that, what you mean by layers? A. Well, usually, for the subcutaneous tissue, fat, muscles, we put in chromics or plain catgut.

Sometimes we put in cotton sutures. I usually use chromic in this type of wound. And then put in some interrupted silk sutures in the lip, the mucous membrane.

"Q. In other words, there are layers of stitches, then, is that correct? A. Yes. That is right.

"Q. Now, if this hadn't been done, what would have happened? A. Well, he would have had a slow healing wound there, and probably a lot of scar tissue and some deformitory in the lip."

The question now arises as to what may be deemed serious bodily injury. In construing its statute, the Court of Criminal Appeals of Texas in a long line of cases has defined "serious bodily injury". One of the latest cases is that of Silva v. State, 152 Tex.Cr.R. 545, 215 S.W.2d 887, where in paragraph 1 of the syllabus it is said:

"A 'serious injury' has been inflicted · upon a person assaulted so as to·render the assault an aggravated assault, when the injury is such that would give rise to apprehension or is attended with danger."

See also McKee v. State, 93 Tex.Cr.R. 217, 246 S.W. 1035, 1036; Cain v. State, 138·Tex.Cr.R. 573, 138 S.W.2d 102, and Gonzalez v. State, 146 Tex.Cr.R. 108, 172 S.W.2d 97.

In the McKee case the court said:

"'By serious bodily injury as used above, is meant that the injury must be grave and not trivial; such an injury as gives rise to apprehension of danger to life, health or limb.'"

In the actual application of the definition, we find from an examination of the Silva case that there was evidence that defendant cut the assaulted person with·a knife, inflicting a severe wound on the thigh of his leg and which severed a large artery and several of the more important muscles, and required hospitalization for four days, after which the leg was placed in a cast, and that as a result of the injury, the victim could not kneel down very well. The court held that this sustained finding that the injury was a "serious injury" rendering the assault an aggravated assault. In the McKee case,

supra, the defendant, a woman, cut her lover with a knife so that he died and she was charged with murder, but was convicted of the included·offense of aggravated assault.

In the Cain case, supra, the complaining witness was knocked unconscious by use of a steel rod, beaten and kicked, and the court held that this did not constitute aggravated assault.

In the Gonzalez case, supra, the complaining witness had been stabbed three times, once above the heart and once below it, and also in the hip, and the wounds were two inches deep and the complainant was in the hospital two and one-half days, yet the court of criminal appeals held that this did not constitute aggravated assault, seemingly based on the fact that the wounds did not extend into the cavity, and hence it was the thought of the court that such wounds did not turn out dangerous.

In Abercrombie v. State, 156 Tex.Cr.R. 547, 244 S.W.2d 512, the complaining witness in a fight with the defendant lost an entire ear, and it was there held that the injury was in fact a "serious bodily injury".

In Davis v. State, 150 Tex.Cr.R. 131, 199 S.W.2d 167, it was held that whether fractured jawbone was a serious bodily injury that would justify conviction of one who inflicted it of aggravated assault and battery was for the jury.

It will be observed from a study of the facts in the cases referred to that the injuries inflicted came about by the use of knives, a club or other means held in Oklahoma to be by use of a dangerous weapon, and to constitute a felony. (See Tit. 21 O.S.1951 § 645.) See also Section 681 of the same Title, covering assaults with intent to commit felony. That is to say, in Oklahoma we already had prior to the passage of Tit. 21 O.S.1951 § 647, as limited by the definition set out in the said act, statutory provisions to cover the kind and nature of crimes disclosed by the facts in the Texas cases.

Some illustrative cases are: Bean v. State, 77 Okl.Cr. 73, 77, 138 P.2d 563, where use of the fist was involved, charged with assault with intent to kill, but convicted of the lesser offense of assault with a dan-

gerous weapon; Tipler v. State, 78 Okl.Cr. 85, 143 P.2d 829, involving use of leather strap; Smith v. State, 79 Okl.Cr. 1, 151 P.2d 74, dangerous weapon defined; Jones v. State, 46 Okl.Cr. 187, 287 P. 1073, involving knocking person unconscious and stomping with heavy shoes; and Ray v. State, 35 Okl.Cr. 322, 250 P. 438, involving shooting at another with intent to kill; and Brockman v. State, 60 Okl.Cr. 75, 61 P.2d 273, involving felonious assault.

By reason of our statutory provisions covering assault, § 641, and battery, § 642, assault with a dangerous weapon, § 645, and felonious assaults, § 681, as found in Title 21 O.S.1951, we are persuaded that the Legislature was attempting to enact provisions to cover a battery on a person where the injury would be of a more serious character than the ordinary battery, but by reason of the restricted definition, such statute in its present form fails to bring about such objective.

In the within case there was no evidence that the injured lip of the defendant was such as could have reasonably given rise to apprehension of danger to life, health or limb.

We have examined the decisions of other courts construing their statute covering aggravated assault and battery, but have not discovered a statute exactly like subdivision 6 of the Texas statute, and our statute. See 4 Am.Jur. § 26, 6 C.J.S., Assault and Battery, § 79, page 936 and 5 C.J. 729, 733; Hallett v. State, 109 Neb. 311, 190 N.W. 862; State v. McDaniels, 145 Neb. 261, 16 N.W.2d 164, and State v. Woodward, 69 Wyo. 262, 240 P.2d 1157.

In Nebraska assault and battery has been held to take place where there is "great bodily injury", and great bodily injury as defined by the Supreme Court of that state. But it is evident that there is a distinction between "great bodily injury", and "serious bodily injury". The Nebraska court was not called upon to define the latter phrase. We prefer the Nebraska definition of aggravated assault, as set out in the Hallett case, supra, but would not be justified under the facts in the within case in adopting it.

In 1950 the Texas legislature by H.B. 59 amended Articles 1147 and 1148 of the Penal Code of Texas, 1925. In addition to subdivision (6) of Article 1147, the sub-division apparently copied by the Oklahoma Legislature, there appears a pertinent and additional situation where an assault and battery becomes aggravated, and being: "(8) *When committed with premeditated design, and by the use of means calculated to inflict great bodily injury*". (Emphasis supplied.) Arizona has a like provision in its statute, and in State v. Romero, 61 Ariz. 249, 148 P.2d 357, 358, where the facts were in many respects similar to the facts in the within case, a conviction was sustained; but it must be noted that the pertinent statutory provision covers "great bodily injury".

In State v. Woodward, supra [69 Wyo. 262, 240 P.2d 1159], cited by the State, while the facts there were much like the facts in the within case as to injury, the statute there provided the infliction of *"grievous bodily harm"* constituted aggravated assault and battery. Clearly there is a difference between "serious" bodily injury, and "grievous" bodily injury, as the various dictionaries and texts will reveal.

In some jurisdictions an assault and battery of the nature as in the within case, by two or more persons, would constitute aggravated assault, but in the within case, as indicated, by reason of the limitation of the statutory definition, we are forced to the conclusion that the evidence was insufficient to make out a case of "serious bodily injury" to the prosecuting witness in that the injury was not sufficient to cause apprehension of danger to *life*, health or body and hence there was no aggravated assault. There was, however, ample evidence to support a conviction of assault and battery. Tit. 21 O.S.1951 §§ 641 and 642. The judgment and sentence is, accordingly, modified to a sentence of thirty days in the Oklahoma County jail, and to pay a fine of $100, Tit. 21 O.S. 1951 § 644, and as thus modified, the judgment is affirmed.

JONES, P. J., and BRETT, J., concur.