Louie HALL, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12389.

Criminal Court of Appeals of Oklahoma.

April 3, 1957.

John Connolly, Albert D. Lynn, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

PER CURIAM.

Louie Hall, plaintiff in error, hereinafter referred to as defendant, was charged in the district court of Canadian County with the crime of assault with a dangerous weapon, was convicted of aggravated assault, but the jury being unable to agree upon a verdict, left the punishment to be fixed by the court, who assessed the penalty at one year confinement in the county jail, a sentence within that prescribed for the felony charged, 21 O.S.1951 § 645, which provides imprisonment in the penitentiary not exceeding five years or imprisonment in the county jail not exceeding one year, as well as being within that provided for conviction of the misdemeanor found of aggravated assault, 21 O.S.1951 § 647, providing penalty for aggravated assault at imprisonment in the county jail not exceeding one year, or by a fine of not more than $500, or both such fine and imprisonment.

The case is here on appeal, and for reversal three propositions are advanced: (1) That the evidence was insufficient to justify the court in submitting the question of aggravated assault to the jury; (2) That assuming for argument only that the evidence was sufficient to give the instruction to the jury on aggravated assault, the instruction given was an incorrect statement of the law; and (3) That the court should have instructed the jury on the included offense of assault and battery.

As we view the problem for solution, certain basic fundamentals assert and interpose themselves which require a disposition of the case on grounds other than those urged.

The information attempted to charge the crime set forth in 21 O.S.1951 § 645, the pertinent portion reading:

"Every person who, with intent to do bodily harm, and without justifiable or excusable cause commits any

assault upon the person of another with any sharp or dangerous weapon * * * with intent to injure any person, although without intent to kill such person or to commit any felony, is punishable by imprisonment * * *" etc.

The information filed is essentially in the language of the statute, except that it sets forth not only an assault or striking at one Basil Wilson, with a described sharp and dangerous weapon so termed by the manner of its use, which would constitute nothing greater than an attempt[1] to commit a battery, but recites an actual contact, which, of course, would constitute a battery[2].

It should be kept in mind that our statutory provisions covering the various degrees of assault and assault and battery were adopted in Oklahoma Territory in 1890 from the Compiled Laws of Dakota Territory of 1887, except the provision covering aggravated assault, which was enacted by the Oklahoma Legislature as recently as 1951. See Minnix v. State, Okl. Cr.1955, 282 P.2d 772, going into the historical background of that charge and pointing out the peculiar and distinctive legislative definition.

The Supreme Court of North Dakota in 1894 in the case of State v. Marcks, 3 N.D. 532, 58 N.W. 25, 27, held that an assault with a dangerous weapon, committed with intent to do bodily harm, as defined by section 6510, C.L.1887 (worded exactly as our 21 O.S.1951 § 645), necessarily included in its commission a simple assault, but the offense did not necessarily include in its commission the offense of assault and battery. The court said:

"The essential averments in describing the crime defined in the first part of section 6510 are few and simple. No battery should be charged even in those cases in which the proof will show that a battery was in fact committed in the act constituting the felonious assault."

Apparently recognizing the fact that many laymen and some state's attorneys in the face of the statutory definitions of assault and of battery, Comp.Laws Dakota, 1887, §§ 6505, 6506, 21 O.S.1951 §§ 641, 642, persisted in treating an assault as an *assault and battery* and perhaps because the statute was inherently defective in not providing for a battery, the Dakota Legislature amended its statute, § 6510, C.L.1887, to include the words *"or assault and battery"*, Rev.Code N.D.1895, § 7145, or that an information would not charge simply an assault with a dangerous weapon, but an assault and battery with a dangerous weapon. See State v. Climie, 1903, 12 N. D. 33, 94 N.W. 574; State v. Woodell, 1911, 22 N.D. 230, 132 N.W. 1003.

In that way, if the evidence in the opinion of a jury would not support the felonious charge, they might consider its sufficiency to support any included offense, such as aggravated assault, or aggravated assault and battery, or perhaps simple assault and battery, under proper instructions of the court.

However, our section 645 of Title 21 O.S.1951, remains the same in wording as the 1887 Dakota Territory statute, and this, as we shall see, has resulted in much confusion in our decided cases over the years. And the finger of fault points to the omission from our statute of the words *"or assault and battery"*, recognized and acted on accordingly in at least two opinions, but overlooked in many more.

The first real analysis of 21 O.S.1951 § 645, § 2344, R.L.1910, by this court was made in 1918 in the case of Parks v. State, 14 Okl.Cr. 413, 171 P. 1129, 1130. There it was flatly held that the language of Section 645, supra, was not broad enough to include an assault and battery. The North Dakota case of State v. Marcks was cited and quoted from at length.

---

1. 21 O.S.1951 § 641. "Assault defined.— An assault is any wilful and unlawful attempt or offer with force or violence to do a corporal hurt to another."

2. 21 O.S.1951 § 642. "Battery defined.—A battery is any wilful and unlawful use of force or violence upon the person of another."

In the body of the opinion Judge Matson said:

"The first part of section 2344 [22 O.S.1951 § 645] makes it a felony to commit an assault upon a person with any sharp or dangerous weapon with intent to do bodily harm, and without justifiable or excusable cause; the second part makes it an offense to shoot at another, or to attempt to shoot at another, with any kind of firearm or air gun or other means whatever, with the same intent and without intent to kill and without justifiable or excusable cause. The language of said section, therefore, cannot with reason be construed as broad enough to include assaults and batteries made with sharp and dangerous weapons, or by firearms, but such offenses would be included within section 2336, Revised Laws 1910 [21 O.S.1951 § 652] * * *";

which the Judge then quotes. Judges Doyle and Armstrong concurred in the opinion.

The evidence in the Parks case developed that the defendant did not use his revolving pistol as a club, but shot at and actually hit and wounded the victim. For such reason it was held that at the close of the state's evidence, the defendant's demurrer based on the grounds: "(1) That the evidence did not warrant the court in submitting the case to the jury for any offense charged in the information; and (2) for the reason that there was a fatal variance between the information and the proof on the part of the state", should have been sustained, and the trial court should have ordered defendant held for trial under a new information, as provided by section 5930, R.L.1910, 22 O.S. 1951 § 923, and based on section 2336, R.L. 1910, 21 O.S.1951 § 652.

Attention must be called to the fact that prior to the Parks case and in 1915 in the case of Moody v. State, 11 Okl.Cr. 471, 148 P. 1055, in an opinion by Judge Armstrong, this court without consideration of the defect in the "Assault with a Dangerous Weapon" statute, 21 O.S.1951 § 645, that

was subsequently brought to light in the Parks case, held:

"When an information is held by the court to sufficiently charge assault with a sharp and dangerous weapon with intent to do bodily harm, the court is not warranted in giving an instruction to the effect that the accused must be convicted of the felony charged, or acquitted; and this is especially the rule when the testimony is such as to raise the issue of simple assault and battery."

Judge Doyle concurred; Judge Furman was absent.

In 1919 in the case of Harris v. State, 15 Okl.Cr. 369, 177 P. 122, 123, this court in an opinion by Judge Matson, concurred in by Judges Doyle and Armstrong, had for consideration a case where the proof developed a crime other than the one charged in the information. There the court in the body of the opinion said:

"The statutes of this state do not permit of the conviction of the defendant where the proof does not support the allegations of the information as to the crime charged, or a lesser grade or degree of such crime, or of an offense necessarily included therein. Where the evidence discloses a higher grade or degree of crime than that charged, or the proof is of an offense different from that charged, or of an offense not necessarily included within the terms of the allegations of the indictment or information, then a variance exists, and the procedure indicated in sections 5921 and 5930, supra [22 O.S.1951 §§ 914, 923], should be followed."

There comes to our attention the case of Smith v. State, 1944, 79 Okl.Cr. 1, 151 P.2d 74, 76, where in an opinion by Judge Doyle, concurred in by Judge Barefoot, with Judge Jones dissenting, it was held inter alia:

"Where the information attempts to charge an assault with a dangerous weapon as provided in 21 O.S.1941 § 645, and the proof on the part of the state shows the commission of a feloni-

ous degree of assault and battery, as defined by 21 O.S.1941 § 652, or some lesser grade of assault and battery, there is a fatal variance between the allegations and the proof, and upon proper motion the court should advise the jury to acquit upon the ground of variance and direct a prosecution to be commenced for the higher grade of offense.

" 'Battery' includes assault, but 'assault' does not include battery. When the assault culminates in a battery, the offense is assault and battery, and the prosecution should be commenced for that grade of assault and battery which is reasonably supported by the state's evidence.

"Where the information charges any grade of assault and battery, there may be a conviction of the same or any lesser grade of assault which is necessarily included in such a charge. But where the information merely charges a certain grade of assault, there may not be a conviction of that grade of assault and battery or of any lesser grade of assault and battery, because a charge of assault does not necessarily include a battery also.

"The offense defined by Sec. 645, 21 O.S.1941, of assault with a dangerous weapon 'with intent to injure any person, although without intent to kill such person,' is a lesser grade of assault and necessarily included in the offense defined by Sec. 652, id., of assault and battery with a deadly weapon, with intent to kill, or by such other means or force as is likely to produce death."

The above did not dispose of the case, although the opinion was officially published, which ordinarily is not done where a rehearing is granted. A rehearing was granted and a new opinion by Judge Barefoot was substituted, being Smith v. State, 79 Okl.Cr. 151, 152 P.2d 279, in which Judge Doyle dissented. However, the new opinion avoided a discussion of the principles enunciated in the quoted paragraphs of the syllabus by the court in the first case. We

have sought some clue as to the reasons for objection to the first opinion by a study of the citations of authorities as basis for dissent, where the following cases were cited: Ponkilla v. State, 69 Okl.Cr. 31, 99 P.2d 910; Bean v. State, 77 Okl.Cr. 73, 138 P.2d 563; Beck v. State, 73 Okl.Cr. 229, 119 P.2d 865; Tipler v. State, 78 Okl.Cr. 85, 143 P.2d 829.

In Ponkilla the information was based on 21 O.S.1951 § 652, which by its terms includes an assault and battery and therefore is not in point on the question of whether an assault charge is sufficiently broad to include a battery.

In the Bean case the defendant was charged with assault with intent to kill, which also came under section 652, but was convicted of the included offense of assault with intent to do bodily harm, section 645, so that case is not in point for the cases are uniform that a lesser charge may be included in the greater.

In the Beck case the question was whether an automobile could be classed as a dangerous weapon so as to charge one under section 645, where the car was used to murder the victim. Of course a battery was involved but the point we are interested in here was not treated.

In Tipler v. State, the question was whether a leather strap 3 inches wide, 20 inches in length and one-fourth inch thick, weighing approximately three quarters of a pound could be classed as a dangerous weapon in a charge under section 645. The question we are here considering was likewise not treated in that case.

From our study it appears that the Parks and Harris cases by Judge Smith Matson, and the above superseded Smith case by Judge Doyle, are the only cases from this court where the problem before us has been frankly treated and not evaded. Reason compels us to adhere to the principles enunciated in the Parks case.

In the within case the evidence was clearly sufficient to support the crime charged under section 645. In fact, it was more than sufficient, because there was not only an attempt to cut the victim, which would have

constituted an assault, but the cutting was actually accomplished. However, the trial court apparently was of the opinion, and justly so from the state of our opinions, that the assault charged included aggravated assault as defined by 21 O.S.1951 § 646 (which definition actually describes an aggravated assault and battery, as demonstrated in Minnix v. State, supra), and gave an instruction treating aggravated assault and battery as an included offense under section 645, which as demonstrated in the Parks case and cases therein cited, cannot be.[3] The jury, then, found the defendant guilty of aggravated assault, a charge therefore not covered by the information.

Under the state of the record at the time the State and defendant rested, the court should have simply submitted the case on the felonious assault, or following the Parks case, in that the evidence developed that a battery was involved, by reason of such variance between the allegations and the proof, should instructed the jury to have returned a verdict of not guilty by reason of the variance between the allegations of the information and the proof, and a new prosecution should have been directed, charging defendant with the higher offense, 21 O.S. 1951 § 652 or of the offense of aggravated assault, as defined by 21 O.S.1951 § 646. We should point out, however, that if the charge should be filed under section 652, the defendant as this court has uniformly held, could be convicted under section 646 as it is an included offense. See 22 O.S. 1951 §§ 914–923 as to procedure.

In view of the above conclusions, and contemplating a new trial, and by reason of defendant urging that the evidence in the within case was insufficient to support a conviction of aggravated assault, we would briefly summarize pertinent evidence.

The charge arose out of an incident that occurred on February 18, 1956, about 8:30 in the evening on the main street of Yukon. Louie Hall, the defendant, and Basil Wilson, the injured party, had been friends for two years. On the afternoon and evening in question they had gathered with their relatives at the apartment of Basil Wilson and had spent a couple of hours drinking whiskey. Both were apparently very much under the influence of intoxicating liquor. Wilson had borrowed fifty cents from the defendant to play a marble board at a prior time, and had not repaid the same for some reason, and the defendant reminded him of this and they got in an argument and Wilson ordered the defendant to leave his home. The defendant left the apartment which was on the second floor over a store on Main Street, and went downstairs onto the street. Moments later Wilson followed defendant down stairs for the purpose, so he testified at trial, to get a bottle of beer. At any rate, defendant was on the sidewalk at the foot of the stairs and a fight ensued. Defendant was seen slashing at Wilson, who ran into the street and tried to get away, but defendant pursued, slashing at Wilson's back, and Wilson lost consciousness as a result of cuts and wounds received and did not regain consciousness until he was in a hospital at Oklahoma City. He was confined to the hospital for a period of eleven days. Thirty-two stitches were required to close the cuts across his chest alone, and there were cuts in his back, and two cuts on his face and head. He had x-rays, and stated that his doctor thought his lung had been punctured.

3. Due to the definition given to aggravated assault as presently defined by 21 O.S.1951 § 646, an incongruous situation exists. That is to say, a person may be justly convicted of the crime of "assault with a dangerous weapon with intent to do bodily harm" under the provisions of 21 O.S.1951 § 645, a felony charge, under circumstances where the evidence would not support a conviction of the misdemeanor charge of aggravated assault. For under § 645 evidence showing slashing at a person with a knife, but missing, or shooting at but missing, would support a conviction, whereas under § 646 it would not only be necessary to actually cut or have the bullet hit the victim, but the injury would have to cause serious bodily injury. See Minnix v. State, Okl.Cr., 282 P.2d 772. Legislative remedy is long overdue.

No objection was interposed to this answer, and the doctor did not testify. At the trial two months after the cutting, Wilson was still receiving treatment. The jury was permitted to view the wounds in determining whether there was serious bodily injury inflicted.

Deputy sheriff Thurman Hale testified that immediately following the cutting he arrived on the scene and that the defendant admitted that he was the one who did the cutting, and gave witness the knife he had used. It was a heavy army knife with a two and a half inch blade. The defendant did not testify.

■ Counsel urge that the evidence did not show that there was serious bodily injury. Cited is Minnix v. State, supra [282 P.2d 773], where, following the Texas case of Silva v. State, Tex.Cr.App., 215 S.W.2d 887, it is said:

"A 'serious bodily injury' has been inflicted upon a person assaulted so as to render the assault an aggravated assault when the injury is such that would give rise to apprehension of danger to life, to health or limb."

■ In the Minnix case nothing more than a fist fight took place, with the victim receiving a split lip with no evidence of infection or circumstances that would have justified the jury in determining that the injury was such as to give rise to apprehension as to his health. Here the evidence was sufficient. Defendant was still receiving treatment two months after the injuries. The jury viewed the wounds. It was in the province of the jury to determine from the evidence whether "serious bodily" injury had been inflicted.

We think the reasoning in Wimberley v. State, 60 Tex.Cr.R. 65, 130 S.W. 1002, is more logical than some of the later cases from the Texas Court of Criminal Appeals. There the court said in part:

"The testimony developed that on the 25th day of December, 1908, in Blanco county, Tex., at a dance at Bruemer Hall, there was a difficulty between Richard Stahl, the appellant in this case, and one Galbreath. The prosecuting witness testified that he went out of the hall to the bar to get a glass of beer; that the appellant and Galbreath came into the bar, and Galbreath began to push the prosecutor; that the prosecutor pushed him back or away from him, and he came up again, when the prosecutor struck him; that the appellant then rushed into the mêlée, the prosecutor knocked Galbreath down, and the appellant, running up at him, made a quick strike and cut him on the face; that the appellant and prosecutor then clenched, and in the scuffle around the prosecutor was again cut, and this time his throat was cut, and his clothing was cut at several different places when the parties were separated. The witness further testified that, before he ever struck, appellant cut him. The cut on the prosecutor's throat was about five inches long. The prosecutor bled a great deal, and fainted from the loss of blood.

\*　　\*　　\*　　\*　　\*　　\*

"Under the facts of this case there was no simple assault. If appellant was guilty of anything, he was guilty of aggravated assault, without reference to whether it was done in the heat of passion or not. Serious bodily injury was inflicted. The prosecutor had his throat cut, a gash five inches long around his neck, a gash three inches long on the cheek, his coat was cut, and his vest cut. These injuries were such as to create apprehension, and to say that, because a vital artery or vein was not severed, it would not be serious, would be saying that a man could not be convicted of aggravated assault by reason of the infliction of serious bodily injury, because death did not result. The jury having convicted appellant of aggravated assault, we would not be inclined to disturb their verdict. When the character of the wounds are taken into consideration, they were serious, and appellant could only be guilty of aggravated assault; hence no prejudicial

error resulted from the omission of the court to submit the different grounds of aggravation as defined by the statute."

The record reveals that the victim of the cutting did not sign the complaint. He was a reluctant witness and felt that the trouble was the result of the drinking of whiskey by himself and the defendant. He had forgiven the defendant. Such is commendable, but by the provisions of 21 O.S. 1951 § 153, it is said:

"No act committed by a person while in a state of voluntary intoxication, shall be deemed less criminal by reason of his having been in such condition."

The offense was one against the State and public policy demands that persons violating the law be made to answer. Law and order would be destroyed if victims of violations could control the prosecution.

The within case is reversed and remanded with directions that the defendant be given a new trial, and that the county attorney file a new information under 21 O.S. 1951 § 652, or under 21 O.S.1951 § 646, as he may decide, the defendant to be held to answer such charge.