The Attorney General is in receipt of your request for an official opinion wherein you ask the following questions: "1. Is a person who is placed in a dormitory-type private institution (a home for mentally retarded adults) and who is between ages of 18 and 21 years, who has not completed 12 years of public education, a `school age child' or an `adult' ? "2. If the person is a `school age child,' then is the educational residence of the child the school district in which the parents/guardian reside, or the school district in which the private institution for mentally retarded adults is located ? "3. If parents/guardian of a 'school age child' contribute to the child's support in substantial or 'major' degree, is the school residence of the child the same as the residence of the parents/guardian? "4. Is determination of the residence issue affected by whether or not the placement in the private institution is initiated by the parents/guardian of the child? "5. If placement of the person in the private institution is recommended by and substantially funded by the Department of Institutions, Social and Rehabilitative Services of the State of Oklahoma, what is the financial responsibility of the state agency in providing educational services, or providing finances for such educational services?" Your first question inquires as to the legal status of persons over the age of 18 years, under the age of 21 years and who have not completed 12 years of public education. This question can be answered without reference to the existence or degree of handicap and is not affected by current place of domicile. Oklahoma school law, 70 O.S. 1-114 [70-1-114] (1979), expressly provides, in pertinent part: ". . . all children between the ages of five (5) years on or before September 1, and twenty-one (21) years on or before September 1, shall be entitled to attend school free of charge in the district in which they reside . . . ." The entitlement of persons within the age classifications and conditions prescribed by 70 O.S. 1-114 [70-1-114] is in no way adversely affected by attainage of majority for other purposes of the law. A term which is given meaning in one statute may not properly be given a different meaning as may be utilized in another statute. Minnix v. State, Okl.Cr., 282 P.2d 772 (1955). The definition of a "minor," and inversely establishing the age of majority, found in 15 O.S. 13 [15-13] (1971), states in pertinent part: "Minors, except as otherwise provided by law, are persons under eighteen (18) years of age . . . ." The factum of majority for some or even most other purposes of the law does not alter a persons specific status under special legislation intended to advance a specific legislative policy. This is particularly so when the classification is intended to permit broader participatory rights than would otherwise be afforded. Thus, while an individual may be an "adult" accorded majority rights for other purposes, the same person could, at the same time, continue to be a child "entitled to attend school free of charge in the district . . ." in which he or she resides. Your second and third inquiries can likewise be answered without regard to existence or degree of handicap. As stated in 70 O.S. 1-114 [70-1-114], the entitlement to attend school free of charge is to be enjoyed in the school district of residence. Residence of a child eligible for a free public education is also defined by specific statute, 70 O.S. 1-113 [70-1-113] (1971), which states in pertinent part: "The residence of any child for school purposes shall be the legal residence of the parents, guardian, person or institution having the care and custody of the child, if such parents, guardian, person or institution having the care and custody contributes in major degree to the support of such child; provided, any pupil supporting himself entirely by his own efforts shall be considered a resident of the district in which he works and attends school. Provided, further, that the governing body of any state institution, as established under the provisions of Title 10 O.S. 1401 [10-1401] — 10 O.S. 1404 [10-1404], inclusive, and the board of education of any adjacent school district in which the institution is not located may enter into a contract whereby the district will maintain a school for the children of the institution, in which event the residence of such children will be considered as being in the district maintaining the school. Any question as to the place of residence of any pupil shall be decided by the county superintendent of schools of the county in which the pupil contends he resides . . . ." We need not consider here the potential impact of the proviso concerning state operated schools or residential care facilities as the residential care facility here involved is identified by your questions as privately owned and operated. Residence of a child eligible to attend school at public expense is a question of fact to be resolved by reference to who has care and custody of the child and who "contributes in major degree to the support of such child; . . . ." See Gray v. Board of Education of Pawhuska Ind. Sch. Dist., Okl., 389 P.2d 498
(1964). In Gray, supra, the statutory language pertinent here was construed when the Court said: "We think that in enacting that statute, the Legislature intended that where the parents of minor children residing in the family home, have their legal care and custody, and contribute to their support in a substantial, or major, degree, the school residence of the children is the same as the residence of the parents. The statute does not require the parents to contribute the major, or larger, part of all moneys that are expended for the benefit of the children. If it did, then wealthy persons, whether relatives or not, might establish school residences for children merely by having them as guests in their homes and lavishing more expensive "care" upon them than their parents would, or could, afford. That would be placing an absurd construction on the law, and one that could conceivably create undesirable and unnecessary difficulties in the administration of our school district system." So long as the parents, legal guardian or other person, not the private institution or the state, continue to have or exercise custodial control and provide in major degree for the care of a child eligible for free public education the child's residence for school purposes is the residence of the custodial parent, guardian or person. Relative to your fourth question, parents, guardians or other per sons having the care and custody of a child eligible to attend school can not alter the school district of legal residence by unilateral act. This is no less true where the child is domiciled at a private residential care facility as it is were the child sent to live with some relative or other person. See Gray v. Board of Education of Pawhuska Ind. Sch. Dist., supra; see also 83 ALR 2d 516. In answer to your fifth question, the legal ramifications of some degree of involvement by the state through the Department of Institutions, Social and Rehabilitative Services cannot be specifically quantified without reference to the facts of each case. It is possible that the role of the state through DISRS may, depending upon the degree of custodial discretion vested in the Department and/or the extent to which it assumes fiscal responsibility for the child, ultimately impact upon the residence of the child. At some point not capable of definition here, the Department could assume so large a role in the care, custody or support of the child as to change residence for school purposes. Likewise, there is nothing in the law that would preclude a handicapped person not the ward of the state or some other person to establish his or her own residence by fully undertaking their own support. See 70 O.S. 1-113 [70-1-113] (1971). Nor does the law preclude a person from establishing his/her own residence for school purposes by reason of receiving in their own right some form of state assistance. None of your questions, with the possible exception of the first, really concern whether a particular child regardless of existence or condition of handicap shall receive a free public education. Oklahoma law mandates educational opportunity to the class of persons defined. Should a person within the class be a handicapped person, as we must assume are those in the privately operated residential care facility involved, Oklahoma and federal law go even further to guarantee a free public education tailored to and appropriate for their individual needs. 70 O.S. 13-101 [70-13-101] (1975); Pub.L.94-142, 20 U.S.C.A. 1401, et seq. The question is not and cannot lawfully be whether a free appropriate education will be afforded. The question is where; which school district has the instructional, fiscal and administrative responsibility for providing the eligible child's education. Although the duty to provide the education to which the child is entitled is apportioned to the school districts on the basis heretofore discussed, Oklahoma school law recognizes and accommodates a variety of circumstances where actual educational services may not be provided in the school district of residence. The law provides for an adjustment or credit against nonresident tuition, providing the receiving school board approves enrollment. See 70 O.S. 1-114 [70-1-114],(B) (1979). Given statutory grounds a child may be transferred from one school district to another. See 70 O.S. 8-101 [70-8-101], et seq. (1971), as amended. Specific provision is made for adjustment of fiscal affairs so that receiving school districts are provided with proper funding to defray the expense of the education of the transferring student. See 70 O.S. 8-101 [70-8-101], 70 O.S. 8-107 [70-8-107] through 70 O.S. 8-109 [70-8-109] (1971), as amended. Special allowance is made by law to permit school districts with the technical and fiscal assistance of the State Department of Education to enter into cooperative agreements to facilitate efficient and adequate provision of instruction and other services to handicapped or exceptional children. 70 O.S. 13-101 [70-13-101] (1975). By virtue of Pub.L. 94-142 (20 U.S.C.A. 1401, et seq.) and Pub.L.93-112, Title V, 504 (29 U.S.C.A. 794) the State of Oklahoma and its local school districts undertake to provide all handicapped children of the state with a "free appropriate education." Neither Pub.L. 94-142 nor Pub.L.93-112, Title V, 504 expressly or impliedly require the abandonment of state law controlling fundamental policy over where educational services are to be provided, by whom and how financed. If anything, Pub.L. 94-142
expresses a congressional policy choice which encourages provision of so much of educational and related services for handicapped children as may be practicable in the regular schools for the school district of residence.20 U.S.C.A. 1414(a)(1)(C)(iv). State and federal law provide ample opportunity and specific mechanisms by which to provide a free appropriate public education. Nothing precludes parents of handicapped children, who have determined placement in a residential care facility best serves their child's needs, from seeking a transfer to the school district wherein the residential care facility is located. Nothing prevents those same parents from seeking a modification of their child's educational placement under a cooperative agreement or otherwise so as to provide for continued access to educational services in the locale of the residential care facility. School districts may not arbitrarily refuse to accommodate the needs of parents and children to a transfer or change of placement where the best interests of the child are documented as being advanced by the transfer or change of placement. The due process rights of parents and children, including judicial review are expressly guaranteed by state and federal law. See 70 O.S. 8-101 [70-8-101] et seq. (1971), as amended, and 20 U.S.C.A. 1415. Parents and other private parties cannot, however, by their unilateral acts impose upon a school district the instructional, fiscal and administrative responsibility of providing a free public education and related services. A school district is not required to undertake the substantial burdens involved at the expense of its taxpayers solely because a private residential care facility locates within its boundaries and serves school age children who are not legal residents. Therefore, it is the official opinion of the Attorney General that: 1. A person between the ages of eighteen (18) and twenty-one (21) years who has not completed grade twelve (12) and who is a resident of the State of Oklahoma as defined by law 70 O.S. 1-113 [70-1-113] and 70 O.S. 1-114 [70-1-114] (1971), as amended is a school age child eligible for a free public education. 2. The school district of residence of a child eligible for a free public education is the school district wherein the child's parents, legal guardian, person or institution having the care and custody of such child and who contribute in major degree to such child's care and custody reside, except where the child is supporting himself or herself entirely by his or her own efforts, in which case the school district of residence is the school district where the child actually lives, works and/or attends school. 3. Where parents or legal guardians continue to provide in major degree to the care of a child eligible for a free public education their residence is the child's residence for school purposes subject to the exception heretofore stated. 4. The residence of a child eligible for a free public education is not affected by placement of such child in a private residential care facility by the parents or legal guardian of such child. 5. The involvement of the State Department of Institutions, Social and Rehabilitative Services in the decision to place a child eligible for a free public education in a private residential care facility and to fund partially or wholly such placement may, depending upon the degree of Department's custodial and/or fiscal involvement and the other attendant facts of each individual case, operate to affect the residence of the child for school purposes. (JOHN F. PERCIVAL) (ksg)