**2003 OK 76**

**Dempsey Keach BALLARD, Appellant,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 4 OF BRYAN COUNTY, Oklahoma, otherwise known as the Colbert School District, Appellee.**

No. 98,954.

Supreme Court of Oklahoma.

Sept. 23, 2003.

Phyllis L. Walta, Frank E. Walta, Walta & Walta, Hennessey, Oklahoma, for appellant.

Mark S. Rains, Rosenstein, Fist & Ringold, Tulsa, Oklahoma, for appellee.

WINCHESTER, J.

¶1 Pursuant to the Revised Uniform Certified Questions of Law Act, 20 O.S.2001, §§ 1601 et seq., the United States Court of Appeals for the Tenth Circuit submitted this question: Does a school teacher's unexecuted threat to physically assault the school superintendent and another teacher, made on school premises but outside the general purview of the students, constitute "moral turpitude" justifying dismissal under 70 O.S.2001, § 6–101.22? We answer that the action does not fall within the legal definition of moral turpitude.

## FACTS

¶2 The facts as provided by the certifying court are as follows. Dempsey Keach Ballard was employed by the Colbert School District as a teacher and a baseball coach from 1984 until his termination on September 28, 1998. In June 1991, he protested to the school board a reduction in the baseball budget. Shortly thereafter, the school board decided not to renew his coaching contract, and they employed another baseball coach. In June 1992, the school board eliminated Mr. Ballard's teaching position as part of a limited reduction in force. After he sued in state court, the parties settled and the school board reinstated him as a teacher and baseball coach in 1994.

¶3 In July 1997, the defendant, Jarvis Dobbs was hired as school superintendent. Mr. Ballard alleges that the school board members influenced the new superintendent to form a negative opinion about him. In May 1998, on the superintendent's recommendation, Mr. Ballard's contract was terminated. On August 3, 1998, the state court again ordered him reinstated.

¶4 For the following school year, 1998–1999, Mr. Ballard was assigned to teach physical education at the elementary school. On the morning of August 14, 1998, the school superintendent observed him in the copy room of the adjacent middle school. When the bell rang for the first period, the superintendent instructed Mr. Ballard and another teacher to report to their assigned areas. After the other teacher left, Mr. Ballard informed the superintendent that he was already in his assigned area. When the superintendent threatened to write him up for not reporting to his assigned area, Mr. Ballard stated in a threatening tone, "If you do, I'll beat the shit out of you." When the superintendent asked if Mr. Ballard was threatening him, he replied, "No, I'm telling you like it is—I'll do it right here."

¶5 The superintendent left the copy room to get a witness and returned with the assistant principal. When the superintendent again asked whether Mr. Ballard was threatening him, he replied, "What I said before still stands. I'll do it right here." After Mr. Ballard refused to leave the copy room, the superintendent left, and Mr. Ballard told the assistant principal that he was going to hit the superintendent. Some of Mr. Ballard's threats were also heard by a teacher in the hallway outside the copy room.

¶6 Mr. Ballard then caught up with the superintendent to tell him they needed to straighten things out. But he replied they no longer had anything to talk about. The two were joined by the school principal, and Ballard stated he was tired of people talking about his wife. He complained about comments made by the new baseball coach and stated in a threatening manner, "If [the coach] makes any further comment, [he]

would pick something up and knock his head off." Subsequently, Mr. Ballard informed the principal and superintendent that he was sick and was leaving for the rest of the day.

¶ 7 On August 17, 1998, the superintendent and principal notified Mr. Ballard that he was suspended for his comments. After a hearing, the school board voted to terminate Mr. Ballard for moral turpitude pursuant to 70 O.S.2001, § 6–101.22. Mr. Ballard brought a civil rights action in the federal district court, and included a state law claim for a *de novo* hearing on his dismissal under 70 O.S. 2001, § 6–101.27(A). The federal district court affirmed the Board's conclusion that Mr. Ballard's conduct constituted moral turpitude justifying termination. On Mr. Ballard's motion, the court dismissed the remaining claims. The judgment was appealed to the Tenth Circuit, which certified the question concerning moral turpitude to this Court.

## Moral Turpitude

¶ 8 The term "moral turpitude" is used extensively throughout the Oklahoma statutes. It is used to disqualify applicants for a variety of licenses, permits or certificates to practice a state-regulated occupation, or to discipline, including forbidding one from continuing to practice that occupation.[1] The term is used to remove an official from public office.[2] A misdemeanor involving moral turpitude may be used to enhance the sentence for subsequent criminal offenses.[3] Taking a person under the age of fifteen without the consent of the legal guardian for the purpose of "any crime involving moral turpitude" is a felony.[4] Members of boards for state agencies may be removed by the Governor if found guilty by a court of competent jurisdiction of a felony or of any offense involving

---

1. The occupations include: 2 O.S.2001, § 9–23(B)(6), warehouseman; 3 O.S.2001, § 254.1(F)(d), amended 2003 Okla.Sess.Laws, ch. 67, § 1, aircraft dealers; 3A O.S.2001, § 203.5(B)(1), horse racing stewards; 3A O.S.2001, § 205.2a, horse racing ownership interest in organization license; 10 O.S.Supp.2002, § 1116.2, postadjudication review board member appointed by the Oklahoma Commission on Children and Youth; 12 O.S.2001, ch. 15, app. 1–A, Rule 2, certified shorthand reporters; 36 O.S.Supp.2002, § 635(C)(2), Multiple Employer Welfare Arrangements; 36 O.S.2001, § 1450(D), third party insurance administrator; 36 O.S. 2001, § 1464(A)(2), life or accident and health insurance broker; 36 O.S.2001, § 6622(11), sales representative of service warranty insurance; 47 O.S.2001, § 565(A)(5)(e), new motor vehicle dealer or new motor vehicle salesperson; 47 O.S.2001, § 584, used motor vehicle dealer, used motor vehicle salesperson, wholesale used motor vehicle dealer, manufactured home dealer, manufactured home installer, manufactured home manufacturer; 59 O.S.2001, §§ 144(A)(6), 148(A)(2), podiatric physician; 59 O.S.Supp. 2002, § 161.12(B)(1), chiropractic physician; 59 O.S.2001, § 328.32(A)(1), dentist; 59 O.S.2001, § 328.33(a), dental hygienist; 59 O.S.2001, §§ 503, 509(6), 513, allopathic physician; 59 O.S.2001, § 532, athletic trainer; 59 O.S.2001, § 567.8(B)(2) amended by 2003 Okla.Sess.Laws, ch. 190, § 5, registered nurse or licensed practical nurse; 59 O.S.2001, § 637(A)(5) osteopathic physician; 59 O.S.2001, § 858–312(15), real estate licensee; 59 O.S.2001, § 887–13(5), physical therapist; 59 O.S.2001, §§ 1305(A)(3) [amended 2003 Okla.Sess.Laws, ch. 204, § 5], 1310(A)(5), 1315(1), bail bondsman; 59 O.S.2001, §§ 1458(A)(4), 1468(5), polygraph examiner; 59

O.S.2001, § 1619(A)(8), speech-language pathologist or audiologist; 59 O.S.2001, §§ 1750.5(6), 1750.7(A)(4), private investigator, security guard, or armed security guard; 59 O.S.2001, §§ 1800.7(B), 1800.13(B)(2), person engaged in the alarm industry business; 63 O.S.2001, § 1454(B)(1), person intending to perform medical micropigmentation; 63 O.S.2001, § 4041(5)(e), dealer of new or used vessels, or motors, or new and used vessels, and motors; 70 O.S.2001, § 3–104.1, person seeking a certificate from Department of Education for an instructional, supervisory or administrative position in an accredited school of this state; 70 O.S.Supp. 2002, § 3311(D)(1), (D)(2)(a), (D)(2)(d), (E), (J)(1)(b), (J)(1)(c), (J)(3)(b), (J)(5), (J)(6), (J)(9), amended 2003 Okla.Sess.Laws, ch. 168, § 7, police or peace officer; 74 O.S.2001, §§ 227.22(A)(4), 227.25(A)(3), abstractor; 74 O.S.2001, § 360.18(B), campus police officer; 74 O.S.2001, § 840–6.4(B)(3), and, 2003 Okla.Sess. Laws, ch. 353, § 5, codified at 74 O.S. § 840–6.5(B), classified state employee.

2. These include the offices of: Const. art 7A, § 1(b), 5 O.S.2001, ch. 1, app. 7, Rule 9, judge; 19 O.S.2001, §§ 901.5, 901.5A, member of the board of directors of a fire protection district; Const. art. 8, § 1, 51 O.S.2001, §§ 51, 55, Governor and other elective state officers, including the Justices of the Supreme Court; 51 O.S.2001, § 93, all state officers not subject to impeachment under Section 1, Article 8 of the Constitution, and all county, city and municipal officers.

3. 21 O.S.Supp.2002, § 51.2.

4. 21 O.S.2001, § 1119.

moral turpitude.[5] Conviction of a crime involving moral turpitude, while enrolled in a university, college or other institution of higher learning may result, under certain circumstances, in revocation of a student loan, grant, fellowship, or teaching fellowship.[6] Because of its frequent use in the statutes and the constitution of this state, the construction of the term "moral turpitude" is significant to thousands of the citizens of this state.[7]

¶ 9 The use of the term in the statutes involves a level of conduct higher than mere impropriety. In that sense the term's use protects the occupations and professions from arbitrary expulsions and also protects the public, which relies on the state licensing schemes to discipline dishonest practitioners. The term cannot be used as a catchall for every kind of conduct that is offensive, inappropriate or unprofessional.

## CONSTRUCTION OF MORAL TURPITUDE

¶ 10 The history of the attempts to meaningfully define this term is long. In his dissent to *Jordan v. De George,* 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886, Justice Jackson complained of the vagueness attached to the word, and the unfairness of the application of the definition. Our Court has defined this term as "an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow men or to society in general, contrary to the accepted and customary rule of right and duty between man and man." *In re Williams,* 1917 OK 459, ¶ 6, 167 P. 1149, 1152. *Bancroft v. Board of Governors of the Registered Dentists of Oklahoma,* 1949 OK 216, ¶ 10, 210 P.2d 666, 668, cited *In re Williams* as holding that moral turpitude is "anything done contrary to justice, honesty, modesty, or good morals." In *State ex rel. Oklahoma Bar Ass'n v. Jones,* 1977 OK 118, ¶ 7, 566 P.2d 130, 132, the Court observes, "Moral turpitude implies something immoral in itself, regardless of the fact whether it is punishable by Law.... In the concept behind the phrase 'moral turpitude,' the element of intent and knowledge are regarded as important." The Court has made the additional observation that, "Moral turpitude is admittedly an elusive concept incapable of precise definition. Its definition may change with the times and vary from community to community." *State ex rel. Oklahoma Bar Ass'n v. Denton,* 1979 OK 116, ¶ 5, 598 P.2d 663, 665. Accordingly, we will examine the cases where specific conduct has been construed as moral turpitude, and conduct that has been held not to rise to this level.

## CASES FINDING MORAL TURPITUDE

¶ 11 The majority of the cases in this state that discuss moral turpitude are bar matters. When *In re Williams,* 1917 OK 459, 167 P. 1149, was handed down, an attorney's license could be suspended or revoked if he had been convicted of a felony under the statutes of Oklahoma, or a misdemeanor involving moral turpitude. Rev. Laws 1910, § 252. Two attorneys were disbarred after being convicted of conspiracy. The conspiracy involved a probate judge and his former partner, among others, to "prey upon, dissipate, and appropriate the funds of estates of minors and incompetent full-blood Indians." The Court held that this was a crime involving moral turpitude.

¶ 12 Other bar cases found moral turpitude for: charging and receiving a fee great-

5. These include: 59 O.S.2001, § 137(G)(2), member of the Board of Podiatric Medical Examiners; 59 O.S.Supp.2002, § 161.4(F)(2), member of the Board of Chiropractic Examiners; 59 O.S. 2001, § 396.21, recodified at § 396.1A, 2003 Okla.Sess.Laws, ch. 57, § 31, member of the Oklahoma Funeral Board; 59 O.S.Supp.2002, § 698.4(C)(2), member of the Board of Veterinary Medical Examiners.

6. 70 O.S.2001, § 624(4).

7. Other examples include: If convicted of a felony involving moral turpitude, a retiring sheriff or deputy sheriff may not retain that officer's firearm and badge, 19 O.S.Supp.2002, § 554. A person seeking acquisition of control of, or merger with a domestic insurer must take an oath that he or she has not been convicted of a misdemeanor involving moral turpitude, 36 O.S.2001, § 1653(B)(1)(b)(2). No person may be appointed to the Advisory Committee of Registered Electrologists who has been convicted of any felony or any crime involving moral turpitude, 59 O.S. 2001, § 536.5(A).

er than that allowed by federal statute for services rendered in connection with the recovery of war risk insurance;[8] defrauding the telephone company by use of an electronic device used to make long distance telephone calls and avoid paying for them;[9] making a false material declaration while under oath before a grand jury;[10] committing the crimes of extortion, conspiracy and bribery;[11] making and subscribing individual tax returns the attorney knew were not true;[12] unlawfully possessing amphetamines and marijuana;[13] defrauding an innkeeper;[14] embezzling and falsely accounting by a Special District Judge;[15] and concealing a shotgun used in the commission of a crime.[16]

¶ 13 A dentist was found guilty of issuing a check without sufficient funds to pay the same. The Court held that this was a crime involving moral turpitude and affirmed the action of the Board of Governors of the Registered Dentists of Oklahoma in revoking his license.[17] The Court affirmed a district court judgment that sustained the board of education's decision to dismiss a teacher for several infractions, including moral turpitude because she falsified disciplinary reports.[18]

### CASES FINDING NO MORAL TURPITUDE

¶ 14 In *State ex rel. Oklahoma Bar Association v. Sullivan*, 1979 OK 1, 596 P.2d 864, a district judge was removed from office by the Court on the Judiciary for oppression in office. When the Oklahoma Bar Association subsequently commenced disciplinary proceedings against him on these same grounds, the Court dismissed the complaint holding that the actions taken by the judge did not involve moral turpitude. Those actions included an unjustified arrest and citation of a court bailiff for contempt, abuse of counsel in a felony case, advising defendants in criminal matters that a charge carried a penalty in excess of the statutory maximum, taking the role of an advocate for a friend and verbally abusing the attorney representing one of the parties for no other reason than personal dislike, refusing to permit a defendant the right to enter a plea in a misdemeanor case because the defendant did not know his Social Security number, threatening a law enforcement officer with jail or fine for chewing gum in court, and refusing to approve a bond of a defendant charged with a misdemeanor causing the defendant to remain in jail over a weekend.[19]

¶ 15 The Oklahoma Bar Association brought a show cause proceeding for discipline of an attorney who pleaded guilty to the offense of a reporting violation of the Federal Election Campaign Act of 1971. 2 U.S.C., §§ 434,441. The Bar alleged this was a crime of moral turpitude. The Court held that because the crime, a misdemeanor, involved no element of willful intent, it could not involve moral turpitude.[20]

¶ 16 In *Kelley v. City of Tulsa*, 1977 OK 160, 569 P.2d 455, Kelley had applied to the Police Department of Tulsa for a private guard license. This was denied based on the assertion that he had been convicted of a

**8.** *In re Stolper*, 1939 OK 337, 94 P.2d 832.

**9.** *State ex rel. Oklahoma Bar Ass'n v. Brandon*, 1969 OK 28, 450 P.2d 824.

**10.** *State ex rel. Oklahoma Bar Ass'n v. Gresham*, 1976 OK 155, 556 P.2d 264.

**11.** *State ex rel. Oklahoma Bar Ass'n v. Hall*, 1977 OK 117, 567 P.2d 975.

**12.** *State ex rel. Oklahoma Bar Ass'n v. Simms*, 1978 OK 153, 590 P.2d 184.

**13.** *State ex rel. Oklahoma Bar Ass'n v. Denton*, 1979 OK 116, 598 P.2d 663.

**14.** *State ex rel. Oklahoma Bar Ass'n v. Warzyn*, 1981 OK 23, 624 P.2d 1068.

**15.** *State ex rel. Oklahoma Bar Ass'n v. Cook*, 1983 OK 33, 661 P.2d 531.

**16.** *State ex rel. Oklahoma Bar Ass'n v. Harlton*, 1983 OK 87, 669 P.2d 774.

**17.** *Bancroft v. Board of Governors of the Registered Dentists of Oklahoma*, 1949 OK 216, 210 P.2d 666.

**18.** *House v. Independent School District I–29 of Muskogee County*, 1997 OK 35, 939 P.2d 1127.

**19.** *State ex rel. Oklahoma Bar Ass'n v. Sullivan*, 1979 OK 1, 596 P.2d 864.

**20.** *State ex rel. Oklahoma Bar Ass'n v. Jones*, 1977 OK 118, 566 P.2d 130.

crime involving moral turpitude and lacked good moral character as defined by the Tulsa City Ordinance. The facts reveal that Kelley had pleaded guilty to a charge of public drunkenness and had been arrested for being absent without leave from the military service. After the denial of the application was upheld by a vote of the commissioners, Kelley filed an appeal to the district court, which held that the Board had not acted in an arbitrary or capricious manner, and denied an injunction. The Court considered the circumstances surrounding the allegations and held that a conviction of public drunkenness was generally not the kind of offense that signified an inherent quality of baseness, vileness or depravity denoting moral turpitude. *Kelley*, 1977 OK 160, ¶ 5, 569 P.2d at 457. The Court found that the action of the Board in affirming the denial was arbitrary, and reversed the decision. *Kelley*, 1977 OK 160, ¶ 5, 569 P.2d at 458.

## APPLICATION OF CASE LAW TO CERTIFIED QUESTION

¶ 17 Most of the statutes and cases we have cited involve conviction of crimes of moral turpitude. The appellee emphasizes that 70 O.S.2001, § 6–101.22(1)(7) provides for a teacher's dismissal for "any reason involving moral turpitude." We note that the Governor and other elected state officers, including the Justices of this Court, are subject to impeachment under similar grounds, that is: "any offense involving moral turpitude." Okla. Const. art. 8, § 1. Permanent classified state employees, which are otherwise protected in their employment by statute, as are career teachers, may be terminated for "acts involving moral turpitude." The appellee suggests that the concept of moral turpitude must naturally evolve to meet the pressing issues facing society at any given moment and that Ballard's threats of violence fit within such parameters. While we agree that Ballard's threats were unprofessional, unwise and unacceptable behavior, we cannot agree that the threats are on par with the acts construed to constitute moral turpitude.

¶ 18 The appellee asserts that "numerous Oklahoma statutes make clear that intentional threats of violence by themselves are pro-

scribed by law and, therefore, totally socially unacceptable and vile." The appellee cites *Minnix v. State*, 1955 OK CR 37, 282 P.2d 772, "[A]n assault is any willful and unlawful attempt or offer with force or violence to do a corporal hurt to another." The opinion itself clearly states that an assault must include a further action such as where one lifts his cane or his fist in a threatening manner or strikes at a person and misses. *Minnix*, 1955 OK CR 37, ¶ 8, 282 P.2d at 775. Before *Minnix* this Court held: "[I]t is not an offense to threaten by words to hit another, but there must be an overt act or offer or an attempt to hit before the crime of assault is committed...." *Crilley v. State*, 15 Okla. Crim. 44, 46, 181 P. 316. The defendant in *Crilley* was convicted of simple assault when he threatened a person and then threw a stick or club at him.

## CONCLUSION

¶ 19 We reiterate that Ballard's threats were unprofessional, unwise, and unacceptable. But after a consideration of the statutes employing the term moral turpitude, and the case law construing the term, we answer that Ballard's unexecuted threat against a school superintendent and another teacher, made on school grounds but outside the general purview of the students, does not constitute moral turpitude under the law of the State of Oklahoma.

CERTIFIED QUESTION ANSWERED.

Concur: WATT, C.J., OPALA, V.C.J., KAUGER, SUMMERS, BOUDREAU, JJ.

Dissent: LAVENDER, HARGRAVE, JJ.

Not Participating: HODGES, J.

