James Wayne **DUPREE**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–73–10.

Court of Criminal Appeals of Oklahoma.

Sept. 13, 1973.

E. Terril Corley, Asst. Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., John C. Williams, Legal Intern, for appellee.

OPINION

BUSSEY, Judge:

Appellant, James Wayne DuPree, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Tulsa County, Case No. CRF–72–224, for the offense of Robbery with Firearms, his punishment was fixed at fifty (50) years imprisonment and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial Oren O'Dell, Jr., testified that on November 18, 1972, he was employed as an assistant manager for a Safeway Store located in Broken Arrow; that at approximately 8:15 p.m. two black men, one of whom he identified in court as defendant, came into the store, stuck a gun in one of his employee's stomach and said "this is a stick-up." Defendant ordered him to open the safe and to get all of the money. He had some difficulty in opening the safe and defendant stated "I better open that fuckin' safe or he'd kill me." He removed the money from the safe and gave it to the defendant.

James Gaylor testified that he was a junior in highschool and worked part-time at the Safeway Store; that on the evening in question he was sweeping off the floormat near the exit door when two men came into the store. One of the men, whom he identified in court as defendant, stuck a gun in his stomach and ordered everybody to the front. The assistant manager had some difficulty in opening the safe and defendant threatened to kill him if he didn't get the safe open. After Mr. O'Dell gave the defendant the money, defendant ordered everyone to the back of the store.

Clell Alden testified that he also worked part-time for the Broken Arrow Safeway Store; that at about 8:15 on the evening in question, two men, one of whom he identified in court as defendant, entered

the store. Defendant had a .38 caliber revolver which he pointed at the assistant manager, Mr. O'Dell. Defendant directed a lot of foul remarks to Mr. O'Dell while he was trying to open the safe.

Patricia Young testified that she was employed as a checker at the Safeway Store on the evening in question; that defendant and another black male entered the Safeway Store, armed, and ordered the assistant manager to open the safe. Defendant threatened to kill him when he had difficulty opening the safe.

For the defense, Jerry Harwell testified that he was employed as the manager of Levine's Department Store at 1538 N. Lewis in Tulsa. He testified that the company records reflected that Sebra Davis worked until 8:00 p.m. on November 18.

Joe Brown testified that he operated an upholstery shop at 2534 N. Rockwell in Tulsa; that at approximately 7:30 p.m. the defendant came to his shop and picked up two tables to refinish. Defendant left shortly thereafter driving a light blue Ford Pickup.

Lorraine Brown's testimony did not differ substantially from that of her husband's.

Sebra Davis testified that she had lived with defendant as husband and wife for approximately two years; that defendant picked her up at work at approximately 8:00 p.m. on the evening in question. They intended to see a movie, but upon discovering the line was too long, went home.

Defendant testified that he picked up a couple of tables from Joe Brown at approximately 7:00 p.m. He delivered the tables to his shop and then went to Levine's to pick up Sebra, arriving at approximately 8:00 p.m. They started to attend a movie, but upon seeing the line was too long, went straight home.

■ Defendant asserts several propositions of error, only two of which we deem necessary to discuss. Defendant first asserts that the assistant district attorney

went far beyond that which is permissible or even necessary in his closing argument in attempting to arouse the passion and prejudice of the jurors. We concur. The record reflects that the assistant district attorney repeatedly stated that the defendant and his common-law wife did not testify truthfully. A few examples of such improper statements are as follows:

"He didn't try to make up a story like you heard defense witnesses do here this morning."

Referring to the defendant, the assistant district attorney stated:

"Well, he told a lie, and then he had the guts to set on that stand and say that Mrs. Brown was wrong. Why? Consider this during your deliberation. At the time that you're about to throw the testimony of the four State's witnesses out—consider why he would get up on the witness stand and lie. And he did it in front of you under oath. I submit to you why he lied, because he knew that he was trapped. He knew that he wasn't telling the truth and he was caught in a lie, and he had to lie his way out of it." (Tr. 176)

Again, referring to defendant, the prosecutor stated:

"But he didn't know I was going to bring Officer Aycock in here and prove to you Ladies and Gentlemen that he is not only an armed robber, but he's a liar."

The last reference to defendant's untruthfulness was as follows:

"Mrs. Davis and Mr. Dupree did not tell you one story did they? Do you know why? Because they got upon the stand and lied under oath. Well, let's don't hold it against them too much for committing perjury . . ." (Tr. 191)

In dealing with a similar proposition in the recent case of Ray v. State, Okl.Cr., 510 P.2d 1395, we stated:

"This argument was highly improper and should have been stopped by the trial judge and the jury advised to disregard

it. Although counsel, in closing argument may comment upon the evidence in the case and logical inferences therefrom, he may not inject his personal opinion or beliefs, nor may he speculate as to future criminal proceedings, nor state that witnesses have committed perjury absent a judgment of perjury. See 50 A.L.R.2d 766. The American Bar Association's Standard for Criminal Justice succinctly state the issue in Section 5.8 of the standards relative to the prosecution function and defense function.'

'(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

'(b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

'(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

'(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.' "

We next observe that the assistant district attorney, in attempting to discredit the testimony of defendant's common-law wife improperly stated:

"Another thing I'll submit to you, Ladies and Gentlemen, those of you who have husband and wife and children—imagine if you can, your wife or your husband or your child is picked up and thrown into jail and charged with the capital offense of Armed Robbery and they're facing a term in the State Penitentiary, what

more horrible thing could happen to them, to be charged with a crime that they are innocent of? Now, this has happened to you and your children, or your spouse, so, what are you going to do? You are going to call every person you know—'Do you know a law enforcement officer?—do you know a judge? —do you know anybody, anybody that can help? Look, they've got an innocent person of mine—they've got my wife—they've got my husband—they've got them charged with a crime and going to send them to the Penitentiary —we need some help!' And you appear at the Preliminary Hearing—what one of you could keep an attorney that says, 'I'm not going to let you testify at the Preliminary Hearing.' They couldn't keep you off of the stand—they couldn't keep you off of the stand! Because you will want to tell everybody you met, 'You've got my loved one and they're facing the Penitentiary for a crime they didn't commit.' Think about that, when you're thinking about how innocent James Wayne Dupree is of the crime he is charged with."

We are of the opinion that said remarks are highly improper inasmuch as two witnesses identified defendant as the robber at the preliminary hearing, defendant would have been bound over to stand trial whether or not his common-law wife testified that he was innocent. Yet, the assistant district attorney led the jury to believe that had she testified that defendant would have been set free.

We next observe that the assistant district attorney deliberately asked the jury to not follow the court's instructions concerning not allowing sympathy to enter into their deliberation. The record reflects the assistant district attorney stated:

"And while you're thinking of giving Mr. Dupree this sentiment, and the sympathy that you think he has due to him, because he is the one sitting in the

courtroom, here, before you, and it is a great task for you to find him guilty and send him to the Penitentiary, but I don't have Mr. O'Dell—I don't have Mr. Gaylor—I don't have Mr. Alden, and I don't have Mrs. Young sitting here before you reminding you of the sympathy and sentiment that should be afforded them . . . They are not here before you to remind you of the sentiment that should be afforded them . . . " (Tr. 169)

The second proposition contends that the prosecutor was guilty of gross misconduct in interrupting the examination of the defendant by making an unprofessional comment which amounted to a personal belief or opinion as to the truth or falsity of defendant's testimony, thereby depriving defendant of a fair trial. The record reflects that on redirect-examination of the defendant, his attorney directed defendant to make the same statement as had allegedly been made at the scene of the robbery, apparently to show that the defendant had gold teeth which would have shown, had he made the statement. The record reflects the following:

"Q. (By Mr. Ghostbear)  Jim, will you say, 'Open the fucking safe or I'll blow your head off'—say it?

\*    \*    \*    \*    \*    \*

"Q. (by Mr. Ghostbear) Will you make that statement to the jury?

"MR. HOOPER: Make it like you did on the 18th of November?"

(Tr. 146–147)

We concur that said remark was grossly improper and resulted in prejudice to the defendant.

In conclusion we can arrive at no other conclusion except that the improper conduct of the assistant district attorney resulted in depriving defendant of a fair and impartial trial.  The cause is accordingly reversed and remanded for a new trial.

BLISS, P. J., and BRETT, J., concur.