Patricia **LEWIS** and Arthur **Charles Lewis, Appellants,**

v.

**The STATE of Oklahoma, Appellee.**

No. F–77–286.

Court of Criminal Appeals of Oklahoma.

Sept. 16, 1977.

John T. Elliott, Public Defender, Frank Muret, Asst. Public Defender, for appellants.

Larry Derryberry, Atty. Gen., Ross N. Lillard, III, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Presiding Judge:

The appellants, Patricia Lewis and Arthur Charles Lewis, hereinafter referred to as defendants, were charged, tried and convicted in the District Court, Oklahoma County, for the offense of Receiving a Taken Credit Card, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1550.22. In accordance with a jury verdict, punishment was assessed at seven (7) years' imprisonment for Patricia Lewis and ten (10) years' imprisonment for Arthur Charles Lewis in the care and custody of the Department of Corrections of the State of Oklahoma. From said judgments and sentences, defendants bring this appeal.

At the trial, Mrs. Charles Heflebower testified that she resides at 728 Greenwood, Midwest City, Oklahoma, and identified State's Exhibits No. 1 and 2, as being Sears and Bank Americard credit cards issued to her. Specifically, she acknowledged ownership of the Sears Credit Card and indicated that it had been stolen from her purse some time in December of 1974, at Tinker Air Force Base. She further stated that she had immediately notified the company. She further stated that the card had been taken without her permission and that she did not see the card again until notified of its recovery by Detective Bill Lewis.

At this point in the trial, the jury was excused, and an in camera hearing was held pursuant to a motion to suppress made on behalf of the defendants. The record indicates that two witnesses were called in support of a search warrant issued for the premises occupied by defendants. While the search warrant in this case was not made a part of the record on this appeal it would appear that the search warrant was issued in connection with some stolen furniture and that the credit cards were found as a result of the execution of said search warrant. The validity of said search warrant is not properly before this Court.

Following the in camera hearing, Detective Bill Lewis of the Oklahoma City Police Department, testified that he was assigned to the stolen goods division of the Oklahoma City Police Department. On January 10, 1975, pursuant to the warrant mentioned above, he searched the defendants' residence. He indicated that upon a search of the premises he found a Sears Credit Card belonging to Charles C. Heflebower. He further testified that defendant Arthur Charles Lewis was not present at the residence at the time of the search. Officer Lewis then placed defendant, Patricia Lewis, under arrest and defendant Arthur Charles Lewis was subsequently taken into custody by a patrol officer.

Sylvia Peck then testified on behalf of the State. She stated that during November of 1974, she resided at an apartment

complex in Oklahoma City which was managed by defendant, Arthur Charles Lewis. She further stated that she accompanied Detective Bill Lewis in the search of the defendants' residence. She further testified that both defendants resided in the same apartment as husband and wife.

The last witness for the State was a Jeanine Grissom. Jeanine who testified that on January 10, 1975, she was visiting the State's previous witness. Her testimony was essentially the same as Sylvia Pecks.

Whereupon, the prosecution rested its case. The defense then interposed a demurrer to the evidence which was overruled by the trial court.

The defendant then took the stand on his own behalf. He stated that he had removed several boxes from a near empty apartment pursuant to his job as the manager of the apartment complex. He stated that these credit cards were in one of the boxes he had removed from said apartment. It subsequently was determined that the person who had rented that apartment had given him a false name. At no time did he ever use these credit cards.

Defendant then acknowledged that he had previously been convicted of certain felonies. Finally, the defendant stated that he fully intended to return the credit cards to the people who rented the apartment but they never returned.

After the defendant's testimony, the defense rested.

In his appeal the defendant has alleged some six assignments of error. However, since we find it necessary to reverse this case, we will deal with only one.

For his sixth assignment of error the defendant alleges that the prosecuting attorney committed reversible error in the manner in which he argued the cause to the jury. We must agree.

Throughout his closing argument the prosecuting attorney repeatedly stated that the defendant had lied.

"This argument was highly improper and should have been stopped by the trial judge and the jury advised to disregard

it. Although counsel, in closing argument may comment upon the evidence in the case and logical inferences therefrom, he may not inject his personal opinion or beliefs, nor may he speculate as to future criminal proceedings, nor state that witnesses have committed perjury absent a judgment of perjury. See 50 A.L.R.2d 766. The American Bar Association's Standard for Criminal Justice succinctly state the issue in Section 5.8 of the standards relative to the prosecution function and defense function.

" '(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

" '(b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

" '(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

" '(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.' " *Ray v. State,* Okl.Cr., 510 P.2d 1395, 1401 (1973).

In the case at bar the prosecuting attorney made the following comments:

". . . he's got nothing to lose by lying to you—he's been down for robbery with firearms, he has been down for bugus [sic] check . . ." [Tr. 92]

and again:

"MR. SPEIGEL: I'm sure he would like to forget about it—he's got nothing to lose by lying to you—he's got everything to gain by lying to you—consider his interest in the outcome of this trial—when

you consider whether or not he is telling you the truth . . ." [Tr. 92]

and again:

". . . and I'm not trying to make an emotional appeal with anyone—I'm just trying to say that this is an important case—don't let him sell his story to you—now it's a story and he's trying to sell it to you—he's got nothing—nothing to lose by getting up there and lying to you . . ." [Tr. 94]

[1] Additionally, at Page 82 of the Transcript the prosecutor made the following argument:

". . . and the State shows you that these people have the cards under their possession—in their possession or under their control—then the law presumes that they are guilty—that they have violated this section and you take that presumption with you—and the presumption carries against both of these defendant's—until they show you some believable evidence—creatable evidence to overcome the presumption of their guilt—the law says they are guilty if they have the cards under their control or in their possession—that's the presumption of the law."

Once again, the prosecutor made a similar statement:

". . . he had them—but we don't even have to do that because the law under instruction # 3, says a person who has in his possession or under his control any credit card—can under this section presume to have violated this section—and that presumption goes against those defendants until they come up with some creatable evidence to overcome it." [Tr. 87]

While the Attorney General argues that this is a harmless misstatement of the law we cannot agree. Title 21 O.S.1971, § 1550.22, provides:

"(a) A person who takes a credit card from the person, possession, custody or control of another without the cardholder's consent, or who, with knowledge that it has been so taken, receives the credit card with intent to use it or to sell it, or

to transfer it to a person other than the issuer or the card holder, is guilty of credit card theft and is subject to the penalties set forth in Section 1550.33(a) of this title.

"(b) Taking a credit card without consent includes obtaining it by the crime of larceny, larceny by trick, larceny by the bailee, embezzlement, or obtaining property by false pretenses, false promise, extortion, or in any manner taking without consent of the card holder or issuer.

"(c) A person who has in his possession or under his control any credit card obtained under subsection (b) of this section is presumed to have violated this section."

A careful examination of the record indicates that the trial court instructed on subsection (a) and subsection (c) of the above law but left out entirely subsection (b). The argument of the prosecutor that mere possession of a credit card, unexplained, creates a presumption of guilt coupled with the omission of the clarifying and defining portion of 21 O.S.1971, § 1550.22, makes this error anything but harmless. See *Ray*, supra.

And again the prosecutor went beyond the bounds of proper argument when he stated that the defendant was a "professional criminal."

"Well, what have you got here Ladies and Gentlemen of the Jury—you've got a professional criminal." [Tr. 83]

And again:

". . . he's a professional criminal Ladies and Gentlemen—and she is just as guilty as he is—because she knew all about it, thank you." [Tr. 87]

Clearly this argument had no purpose but to inflame the jury. However, the final blow came at Page 95 of the Transcript, where we find the following:

". . . the law says the presumption is a violation of that section—if you go back in the jury room and come back with not guilty—they will be laughing about this 10 minutes from now—don't let him sell his story to you—they are both guilty she is as guilty as he is—all I

want you to do is follow the law like you promised me you would do . . ."

 Clearly it is improper for the prosecution to state his opinion concerning the guilt of the defendants. Furthermore, the comment concerning the fact that the defendants will be laughing 10 minutes later is highly improper. *Ray,* supra.

 The record reveals that in not every instance did the defense attorney object and seek admonishment of the jury and mistrial for each of the above statements made by the prosecutor. The attorney general argues that these comments are not then properly preserved. We note, however, that the record reveals that the defense counsel did object on several occasions. Nonetheless, we hold that the combined effect of these comments was so prejudicial to the defendants as to create reversible error and had the effect of denying the defendants a fair and impartial trial. See *Kizer v. State,* 96 Okl.Cr. 92, 249 P.2d 132 (1952); *Reid v. State,* Okl.Cr., 290 P.2d 775 (1955), and *Water v. State,* 87 Okl.Cr. 236, 197 P.2d 299 (1948).

Therefore, we find that the trial court erred when it failed to grant the defendant's motion for new trial.

BRETT, J., concurs.