Dennis Eugene BINDER, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F-83-466.

Court of Criminal Appeals of Oklahoma.

April 14, 1986.

Rehearing Denied May 22, 1986.

E. Alvin Schay, Jr., Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Christy J. Caesar, Legal Intern, Oklahoma City, for appellee.

## OPINION

PARKS, Presiding Judge:

Appellant, Dennis Eugene Binder, was charged by Information in the District Court of Comanche County, Case No. CRF–83–248 with Rape, Robbery by Force and Fear and Sodomy. A jury trial was held and a verdict returned of guilty of Rape and Robbery by Force and Fear. The appellant was sentenced to terms of seventeen (17) years imprisonment and seven (7) years imprisonment. From this judgment and sentence, the appellant has perfected this appeal.

On March 29, 1982 at approximately 12:30 a.m., the victim, D.S., was asleep in the living room of her apartment when she was awakened by someone at the foot of her bed. She insisted that the person leave. He refused, and opened the door and let two other men in. There was physical evidence at the scene that the first man had gained entry through a window in one of the bedrooms of the apartment. One of the men then threw a blanket over her head. While one held a knife to her, the other two began ramsacking and rummaging around the apartment. While the lights were initially off in the apartment, the attackers frequently turned lights on and off while searching through the victim's belongings. She was then raped by all three men. During these attacks, the blanket would slip down, and she was able to view the faces of her attackers. Approximately $3.20 was ultimately taken from her purse, along with various other items.

At the preliminary hearing, D.S. testified and identified the appellant in an in court line-up, although she called him by the name of another suspect in the case. She testified she had viewed a number of photographs, and that she had, in fact, identified the appellant in those photographs. She

also testified that the in court line-up identification was made from her memory of the incident.

The appellant took the stand at trial and testified he did not commit the rape, but did not know where he was at the time of the crime.

Appellant called an O.S.B.I. criminologist, who testified that hairs found in the victim's bed sheet were inconsistent with those of appellant's. He testified further that he had made no comparison of the hairs found to the hairs of the victim.

## I.

■ Appellant's first proposition is that the in court identification was unreliable and should have been suppressed. The initial question is whether the identification is reliable. *Hays v. State*, 617 P.2d 223 (Okl. Cr.1980). When examining the reliability of an eye witness identification made in court, this Court has enumerated the following factors to be considered: (1) the eye witness' opportunity to view the defendant at the scene of the crime; (2) the witness' degree of attention; (3) the accuracy of the description given after the crime; (4) the witness' certainty at the first confrontation; and (5) the length of time between the crime and the confrontation. Also, reliability is evaluated in light of the eye witness' subsequent identification. *Gregg v. State*, 662 P.2d 1385 (Okl.Cr.1983); *Davis v. State*, 640 P.2d 573 (Okl.Cr.1982).

In this particular case, the victim testified that she viewed the appellant's face for ten to fifteen minutes while she was being raped. She also testified that the blanket would slip down during the rape, and that the other assailants would turn the lights in the adjoining room off and on while rummaging around. The victim had ample opportunity to view the appellant both during the rape and while the robbery was in progress. The victim was also ultimately positive in the identification of the appellant when shown photographs, and also at the preliminary hearing. Although she was confused as to the name of the appellant, she did on numerous times identify him as one of the persons who raped her. She gave a description of the clothing that all three men were wearing, and a general description of the height and weight and race of the men. The length of time from the crime to the photographic line up was minimal, and she was positive as to the identification of the appellant, although hesitant at first. Viewing her identification in light of her subsequent identification, it is clear that there is no reasonable likelihood that there was a misidentification of the appellant. Thus, we find that the in court identification was reliable and properly admitted into evidence, and the appellant's contention to the contrary is without merit.

## II.

■ Appellant's second proposition is that the state presented insufficient evidence on which to base a conviction for rape because the victim's testimony was not corroborated.

Appellant asserts that the inconsistent testimony at the preliminary hearing and the inadequate identification of the appellant, coupled with no corroboration of the testimony of the victim, requires the verdict to be vacated and a new trial ordered. However, this is not the case. In *Cooper v. State*, 568 P.2d 1300 (Okl.Cr.1977), this Court held that rape convictions may be had on a prosecutrix' uncorroborated testimony, and that testimony must be clear and convincing. We find the victim's testimony meets those requirements and does not require corroboration. Although she may have been somewhat confused as to what order the attackers raped her, this was totally understandable, and she was positive that the appellant was one of the three. She was consistent in her identification of the appellant. A thorough search of the record reveals clear and convincing evidence that does not require corroborative evidence. *Bruner v. State*, 612 P.2d 1375 (Okl.Cr.1980).

■ Appellant further argues that the only corroborative evidence that could have

been offered was not—that being finger-print evidence. No explanation was given as to why it was not offered, or even if any comparison was made. Considering the entire record before this Court, we fail to find any merit in this proposition.

### III.

■ In his third assignment of error, the appellant alleges that a police officer testified by way of hearsay evidence, and also used an evidentiary harpoon to prejudice the jury. The first instance was clearly hearsay testimony, to which an objection was sustained, and which the jury was admonished to disregard. Absent a clear showing of prejudice, the admonishment cures the error. *Kitchens v. State*, 513 P.2d 1300 (Okl.Cr.1973).

■ The so-called evidentiary harpoon occurred in the following manner:

Q   O.K.   Without going into any information you may have received, would you just tell the court and jury what you did, please?

A   At that time I went to our records division and pulled pictures of Mr. Binder; one picture in particular—
MR. COUSINS: Your Honor, I am going to object to that. May we approach the bench? (Tr. p. 42).

This Court set out the features of an evidentiary harpoon in *Bruner v. State*, 612 P.2d 1375, 1378–79 (Okl.Cr.1980):

A review of the case law reflects the presence of certain features when this Court has found an evidentiary harpoon: (1) they are generally made by experienced police officers; (2) they are voluntary statements; (3) they are wilfully jabbed rather than inadvertent; (4) they inject information indicating other crimes; (5) they are calculated to prejudice the defendant; and (6) they are prejudicial to the rights of the defendant on trial.

The testimony complained of, although improper, was not prejudicial enough to require reversal. It was in response to a question posed, and not "out of the clear blue sky." *Riddle v. State*, 373 P.2d 832, 842 (Okl.Cr.1962). The response in this case was not "willfully jabbed," nor calculated to prejudice the appellant. *Titsworth v. State*, 368 P.2d 526 (Okl.Cr.1962); and *Wright v. State*, 325 P.2d 1089, 1093 (Okl.Cr.1958). There is also no evidence that the testimony prejudiced the appellant. In weighing the evidence and considering the punishment imposed, we find the statement did not prejudice the appellant in any way, and find the proposition without merit.

### IV.

■ In his fourth assignment of error, the appellant alleges he was denied effective assistance of counsel. The appellant asserts the trial counsel failed to call an alibi witness that could have testified as to the whereabouts of the appellant at the time of the crime. At the motion for new trial, this witness was called and, in fact, testified as to the whereabouts of the appellant. The trial court denied the motion. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set out the proper standards for judging when a criminal defendant's conviction should be set aside because of counsel's ineffective assistance at trial. The Court explained that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." *Id.* at ——, 104 S.Ct. at 2064. The court developed a two-tiered test to determine whether counsel's assistance was so defective as to require reversal of a conviction. "First, the defendant must show that counsel's performance was deficient", and "[s]econd, the defendant must show that the deficient performance prejudiced the defense." *Id.* An application of this two-tiered test to the instant case leads this Court to the conclusion that the appellant did in fact receive effective assistance of counsel.

As to the first tier of the test, this Court must consider whether counsel's assistance

was reasonable considering all the circumstances. In this instance, the question is whether he acted reasonably in light of the appellant's allegations.

There exists a flaw in accepting the appellant's argument, however, one which is pivotal in this particular case. Presumably, the defendant told his attorney the same story he told the jury when he testified at trial; i.e., he did not know where he was at the time of the crime. If that was the information available to the trial counsel, he could not be expected to search for some unknown alibi witness. Therefore, no lack of diligence can be found in the record, and a claim of ineffective assistance cannot stand.

Since the first tier of the test found the attorney acting reasonably, it is not necessary to consider the prejudicial effect of the attorney's actions. Therefore, we find effective assistance of counsel.

 The issue is then whether the trial court should have granted the appellant's motion for new trial. Clearly, an alibi witness would be material and could affect the outcome of the case. However, in reviewing the record, we find no abuse of discretion in denying the motion for new trial in that the story was obviously concocted after the appellant was convicted of the crime. The appellant asks us to believe that he did not know where he was, but that the alibi witness did. The alibi witness testified at the motion hearing that it was the appellant who told him he was not needed for trial. (This conversation had to take place before the trial, but the appellant testified at the trial that he still had no idea where he was).

Considering the preposterous logic required to sustain the appellant's argument, it is clear the motion for new trial was properly denied, and this proposition is patently frivolous and totally meritless.

## V.

 In his fifth assignment of error, the appellant alleges prosecutorial misconduct denied him a fair trial. A review of the record as a whole reveals that the alleged improper comments were not objected to, and thus, will be reviewed for fundamental error only.

All of the comments have been reviewed, and no prejudicial effect can be found. It is only when argument by the state is grossly improper and unwarranted on some point which may affect the accused's rights that reversal is justified. *Frasier v. State*, 607 P.2d 709 (Okl.Cr.1980); and *Naum v. State*, 630 P.2d 785 (Okl.Cr.1981).

The appellant has not demonstrated that the alleged comments prejudiced him in any way. *Smith v. State*, 656 P.2d 277 (Okl.Cr.1982). Therefore, failing to find fundamental error or prejudicial effect, this proposition is also without merit.

Accordingly, for the foregoing reasons, the judgment and sentence is AFFIRMED.

BRETT, J., concurs.

BUSSEY, J., concurs in results.