Darren Lynn PICKENS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–85–658.

Court of Criminal Appeals of Oklahoma.

Feb. 24, 1988.

David Autry, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Darren Lynn Pickens, was tried and convicted in the District Court of Creek County of the crime of Robbery With a Firearm in Case No. CRF–84–84 and was sentenced to seven and one-half (7½) years imprisonment, and he appeals.

On April 20, 1984, a Zip Trip store in Creek County was robbed by two masked men. Subsequently, on May 2, 1984, a Creek County Deputy, was dispatched to the same store to check a report that a suspicious car had been circling the block. While driving to the Zip Trip store, he heard a radio dispatch from Tulsa County that a robbery of a convenience store had occurred in Sand Springs. The deputy radioed a Sand Springs officer and offered his assistance in pursuing the robbery suspects since he was near the location of the robbery. On his way to that store, he observed a vehicle matching the one reported at the Zip Trip pass him, and further observed that the person in the back seat ducked down and that the person on the passenger side was peeking over the dash. The deputy stopped the vehicle, and the occupants of the vehicle, Carla Ruff, appellant and Maurice Stewart, were interviewed. After *Miranda* rights were read to appellant, he waived them, and explained that he participated in the Zip Trip robbery in Creek County. Maurice Stewart also confessed.

For his first assignment of error appellant asserts that he was deprived of his right to a fair trial because the trial court admitted extensive and prejudicial evidence of an unrelated and uncharged offense. We disagree. The two robberies, the one in Tulsa County and the one at Zip Trip, were very similar. The two convenience stores were just across the County line, both were robbed by a man wearing the same mask and carrying the same shotgun. We find that the evidence of the Tulsa County robbery was admissible to prove the identity of the perpetrator or a common scheme or plan which embraces the commission of two or more crimes so related to each other that proof of one tends to establish the other. *Bruner v. State*, 612 P.2d 1375, 1377 (Okl.Cr.1980). Moreover, the trial court properly instructed the jury concerning the proper application of the other crimes evidence.

The appellant also claims that the State failed to comply with the ten (10) day notice requirement of *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979) since the State only gave three (3) days formal notice prior to trial that it intended to introduce evidence of other crimes. Normally, the State has a duty to provide notice to a defendant ten (10) days before trial of its intention to introduce evidence of other crimes. *Scott v. State*, 663 P.2d 17, 19 (Okl.Cr.1983). "The purpose of this duty is to insure against surprise on the part of the defense and to allow time for the defense to be heard prior to the information being placed before the jury." *Id.* However, in this case, since appellant admitted being involved in the Tulsa County robbery, and knew that the State intended to introduce into evidence the same mask and gun used in both robberies, the element of surprise is not present and the purpose behind the notice requirement is not served. Consequently, this assignment is without merit.

Appellant next alleges that evidentiary harpoons made by Deputy Harrison deprived him of a fair trial. The characteristics of an evidentiary harpoon are: 1)

they are generally made by experienced police officers; 2) they are voluntary statements; 3) they are wilfully jabbed rather than inadvertent; 4) they inject information indicating other crimes; 5) they are calculated to prejudice the defendant; and 6) they are prejudicial to the rights of the defendant on trial. *Bruner v. State,* 612 P.2d 1375, 1378–79 (Okl.Cr.1980).

■ The statement made by Deputy Harrison was in response to a question asked by the prosecutor.[1] Although the comment was improper, it was not sufficiently prejudicial to require reversal or modification. It was clearly in response to a question posed and not "out of the clear blue sky." *Binder v. State,* 717 P.2d 1143, 1146 (Okl.Cr.1986). Furthermore, we find that it was not wilfully jabbed nor calculated to prejudice to the appellant. *Id.* Since there is no evidence that this isolated remark prejudiced appellant, in light of the sentence imposed, this contention is therefore denied.

■ In his third assignment of error appellant contends that the trial court committed fundamental error in failing to give a cautionary instruction on eyewitness identification. However, since appellant failed to request a cautionary instruction, and since no fundamental error exists, this assignment was waived. *Maghe v. State,* 620 P.2d 433 (Okl.Cr.1980).

■ Appellant's fourth assignment of error is that the prosecutor made four comments concerning appellant's failure to testify. In all four comments the prosecutor stated that the evidence presented by the State was "uncontradicted." This Court has held that "when no evidence has been offered by the defense on a particular issue, it may be fairly said that the evidence is 'undisputed,' 'uncontradicted,' or 'unrefuted.'" *Hays v. State,* 617 P.2d 223, 230 (Okl.Cr.1980). Accordingly, we find no error.

In his final assignment of error appellant maintains that the cumulative effect of the errors occurring at trial mandates that this case be remanded for a new trial or that the sentence be modified. We have repeatedly held that where there is no individual error, there can be no error by accumulation. *Master v. State,* 702 P.2d 375, 381–82 (Okl.Cr.1985). This assignment is groundless.

The judgment and sentence is AFFIRMED.

BRETT, P.J., concurs in results.

PARKS, J., dissents.

PARKS, Judge, dissenting:

I disagree with the majority on the issue of the admissibility of the "other crime" evidence under the common scheme or plan exception.

Although the appellant was on trial for a robbery which occurred in Creek County, extensive evidence of a Tulsa County robbery was introduced under 12 O.S.1981, § 2404(B). The trial court ruled that this testimony was admissible to prove identity and common scheme or plan. The trial court's ruling limited its admissibility, holding that the "other crime" evidence was only allowed to the extent required to secure admission of a gun and mask allegedly used in both robberies. However, the trial court allowed five witnesses to testify about the Tulsa County robbery after the gun and mask had been admitted into evidence.

The majority upholds the ruling of the trial court, stating that such evidence falls within the common scheme or plan exception. This Court has repeatedly stated that there must be a visible connection between the crime on trial and the other crime. *Roubideaux v. State,* 707 P.2d 35, 37 (Okl. Cr.1985); *Atnip v. State,* 564 P.2d 660, 663 (Okl.Cr.1977); *Roulston v. State,* 307 P.2d 861, 868 (Okl.Cr.1957). A common scheme can be shown by a method of operation so distinctive as to demonstrate a common plan. As stated by this Court in *Atnip v. State, supra,* at 663:

---

1.  Q. Did you ask him [Mr. Pickens] about any plans or preparations that were made?
    A. There was [sic] plans to hit the one on [Highway] 97 again, earlier that next day—or the day before. When they were stopped on [May] 2nd, they were—I was told that they were casing out the one on 97 again, to hit it again. (Tr. 180–81).

"Common" implies that although there may be various crimes, all said crimes must come under one plan or scheme whereby the facts of one crime tend to establish the other such as where the commission of one crime depends upon or facilitates the commission of the other crime, or where each crime is merely a part of a greater overall plan.

If there is no distinct and visible connection, the evidence is not admissible under the common scheme exception.

In the instant case, both the Tulsa and Creek County incidents involved convenience store robberies perpetrated by masked individuals carrying guns. Here the similarity ends. The robberies occurred in two different counties almost two weeks apart. Apparently, the number of persons in each robbery was different. The driver of the vehicle was different in both robberies. There is also a conflict as to whether the same gun was used. These circumstances do not indicate a method "so unusual and distinctive as to be like a signature." *Johnson v. State*, 710 P.2d 119, 120 (Okl.Cr.1985).

There is nothing to indicate that the two robberies are connected in any manner. As I stated in my dissent in *Roubideaux v. State, supra*, at 41, mere similarity is not enough to establish admissibility under the common scheme or plan exception. The crimes involved here were two separate and distinct crimes. Therefore, the admission of evidence of the Tulsa robbery was error.

Moreover, the appellant was not given ten (10) days notice of the use of this evidence as required by *Burks v. State*, 594 P.2d 771, 774 (Okl.Cr.1979). The State admits that notice was not given until three (3) days before trial.

Because the appellant's trial consisted mainly of "other crime" evidence which should not have been admitted, I respectfully dissent.