2010 OK CR 1

**Jeffery Alfonzo OWENS, Appellant,**

v.

**The STATE of Oklahoma.**

No. F–2008–530.

Court of Criminal Appeals of Oklahoma.

Jan. 8, 2010.

—————————

Julie Ann Ball, Assistant Public Defender, Tulsa, OK, attorney for defendant at trial.

Jake Cain, Assistant District Attorney, Tulsa, OK, attorney for the State at trial.

Stuart W. Southerland, Assistant Public Defender, Tulsa, OK, attorney for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Jennifer Blakeney Welch, Assistant Attorney General, Oklahoma City, OK, attorneys for the State on appeal.

## SUMMARY OPINION

CHAPEL, Judge.

¶1 Jeffery Alfonzo Owens was tried by jury and convicted, in Tulsa County District Court Case No. CF–2007–3564, for the crime of first degree robbery in violation of 21 O.S.2001, § 797. First degree robbery is subject to the 85% Rule pursuant to 21 O.S.Supp.2003, § 13.1. In accordance with the jury's recommendation, the Honorable Clancy C. Smith, District Judge, sentenced Owens to twenty seven (27) years imprisonment. Owens appeals from this conviction and sentence, raising six propositions for review.

I. THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE JURY'S VERDICT, AND JURORS WERE NOT INSTRUCTED AS TO THE LESSER-INCLUDED OFFENSE OF SECOND DEGREE ROBBERY. THIS COURT MUST REVERSE APPELLANT'S CONVICTION FOR FIRST DEGREE ROBBERY.

II. IT WAS REVERSIBLE ERROR FOR THE DISTRICT COURT TO ADMIT EVIDENCE OF A PRIOR CAR THEFT COMMITTED BY APPELLANT TO DEMONSTRATE A COMMON SCHEME OR PLAN. THE EVIDENCE WAS NOT RELEVANT, IT WAS PREJUDICIAL, AND SERVED TO DENY APPELLANT THE RIGHT TO A FAIR TRIAL PURSUANT TO THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

III. MULTIPLE INSTANCES OF PROSECUTORIAL MISCONDUCT SERVED TO DENY APPELLANT THE RIGHT TO A FAIR TRIAL IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

IV. IMPROPER REBUTTAL EVIDENCE WAS PRESENTED TO THE JURY, WHICH VIOLATED PROVISIONS OF OKLAHOMA LAW AS WELL AS THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

V. THE DENIAL OF APPELLANT'S REQUEST FOR AN INSTRUCTION DEFINING REASONABLE DOUBT DENIED HIM THE RIGHT TO DUE PROCESS AND A FAIR TRIAL AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

VI. THE COMBINED ERROR DURING APPELLANT'S TRIAL SERVED TO DENY HIM THE RIGHT TO A FAIR TRIAL GUARANTEED BY THE FOURTEENTH AMENDEMENT OF THE UNITED STATES CONSTITUTION.

¶2 After thorough consideration of the entire record before us on appeal, including the original record, transcripts, exhibits and briefs, we find that relief is required in response to Propositions One, Two and Three. Owen's conviction will be reversed and this matter remanded for proceedings consistent with the decision herein.

¶3 On Saturday night, June 9, 2007, as Lewis Moses entered a liquor store to purchase his Pepsi and half-pint of vodka, he observed a "strange looking" man. Upon exiting the store, Moses was approached by the man and after a brief conversation, Moses agreed to give the man a ride. The man directed Moses through the city, and ultimately led him to 2816 North Boston Place, the last house on a dead end street, bordering a large field. There, rather than exiting the car, the man demanded the keys to Moses' car. Moses refused and the man hit Moses in the face two times. The man then exited the car, pulled Moses out, threw him onto the driveway, stole approximately ninety dollars in cash as well as the car keys, and drove off. Moses testified that he had to roll out of the way to avoid being hit by the car.[1]

¶4 Moses picked himself up and walked down the street, seeking assistance. Delmar Willis, a resident in the neighborhood where

---

1. Moses' car was abandoned on a city street in another neighborhood, and found by police later that night.

Moses was assaulted, found Moses and helped him reconnect with family. Moses testified that after the assault he felt "terrible," but Moses did not seek medical attention until Monday. Pictures taken by his family immediately after the assault show bruising to his face, arms, legs and back. The doctor admitted Moses to the hospital for some tests, though it is unclear for what reason, or how long Moses remained at the hospital.[2]

¶ 5 On the night of the assault Delmar Willis told Moses' daughter, Dana Moses, that Jeffrey Owens may have been the perpetrator because he lived in the neighborhood and "he had a record of robbing people and stealing people's cars." Dana Moses passed the information on to the lead investigator in the case, Detective Bob Little. After Moses made a positive identification of Owens in a photo lineup, Owens was arrested at his Mother's home.

¶ 6 Four members of Owens' family attended court and testified that they were with Owens for various parts of the evening on June 9, 2007. Each witness stated that they recalled the evening because it was the night that Alma, Owens' niece, introduced her infant child Sebring. Owens' Mom made wienies and beans, and everyone came over and spent time in the house, enjoying the baby and the company of family. The prosecutor was able to expose weaknesses and inconsistencies in the stories of these non-professional witnesses.

[1–3] ¶ 7 Owens was charged with first degree robbery. The trial court only instructed the jury on first degree robbery by serious bodily injury.[3] There was no request by defense counsel or the State for any modification or alternative instruction. On appeal, Owens argues both that there was insufficient evidence for the jury to convict him of robbery in the first degree by serious bodily injury, and also that the trial court erred by failing to instruct the jury on robbery in the second degree, by means of force or fear. Our standard for review of an insufficiency claim is whether, "[w]hen viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt."[4] When reviewing jury instructions, we will examine all of the evidence adduced at trial. "[T]he trial court must instruct on any lesser included offense warranted by the evidence."[5] Because Owens did not object to the jury instructions, we review the instructions for plain error.[6]

¶ 8 While serious bodily injury is not specifically defined by statute or jury instruction in the robbery context,[7] this Court considers how the Legislature has defined serious bodily injury elsewhere in the code. The term "serious bodily injury" can currently be found in two statutes: 10A O.S.Supp. 2009, § 1–1–105 and 27A O.S.2001, § 2–6–202. Both statutes define "serious bodily injury" as:

---

2. Moses was dealing with a number of other health issues including liver and heart problems and failing eyesight.

3. 21 O.S.2001, § 797(1).

4. *Johnson v. State*, 2004 OK CR 23, ¶ 10, 93 P.3d 41, 44–45 (quotations omitted).

5. *Jones v. State*, 2006 OK CR 17, ¶ 6, and n. 3, 134 P.3d 150, 154, and n. 3 (citing *Shrum v. State*, 1999 OK CR 41, ¶¶ 5–6, 991 P.2d 1032, 1036 (lesser included instructions should be given if supported by any evidence)).

6. *Jones*, 2006 OK CR 17, ¶ 6, 134 P.3d at 154.

7. Serious bodily injury serves as one basis to distinguish first from second degree robbery. Prior to 2001, any robbery during which force was employed was a robbery of the first degree. The statute was amended in 2001 to incorporate the distinction between a robbery using or threatening serious bodily injury and a robbery using any other force. Owens complains that the lack of clear definition for serious bodily injury results in unfair results. Owens submits an **APPLICATION FOR ORAL ARGUMENT ON THE DEFINITION OF SERIOUS BODILY INJURY IN THE CONTEXT OF ROBBERY IN THE FIRST DEGREE, AND RELATED JURY INSTRUCTIONS** pursuant to Rule 3.8, *Rules of the Court of Criminal Appeals*, Title 22, Ch. 18, App. (2009). This application is **DENIED**. In *Walker v. State*, F–2008–1116, we referred to the Oklahoma Uniform Jury Instruction Committee (Criminal) the question of whether the definition of "fear of immediate injury" should remain in OUJI–CR (2d) 1–146, along with the question of the need for a definition of "serious bodily harm".

a. a substantial risk of death,

b. extreme physical pain,

c. protracted disfigurement,

d. a loss or impairment of the function of a body member, organ, or mental faculty,

e. an injury to an internal or external organ or the body,

f. a bone fracture,

g. sexual abuse or sexual exploitation,

h. chronic abuse including, but not limited to, physical, emotional, or sexual abuse, or sexual exploitation which is repeated or continuing,

i. torture that includes, but is not limited to, inflicting, participating in or assisting in inflicting intense physical or emotional pain upon a child repeatedly over a period of time for the purpose of coercing or terrorizing a child or for the purpose of satisfying the craven, cruel, or prurient desires of the perpetrator or another person, or

j. any other similar aggravated circumstance.

Our statutes dictate that "[w]henever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears." [8] Additionally, we will consider how we have historically defined the term. This Court has discussed serious bodily injury in the context of Aggravated Assault: serious bodily injury is "grave and not trivial; such injury as gives rise to apprehension of danger to life, health or limb." [9] Bruising, swelling, and even a few cracked ribs or stitches has been found insufficient for the felony count of assault with serious bodily injury.[10]

¶ 9 Whatever standard one employs, it cannot be said that the State established serious bodily injury. Here, Moses was punched twice in the face, pulled from his car and thrown to the pavement. Moses rolled down the pavement to avoid being hit by his car as Owens drove away, suffering abrasions to his back, arms, legs and face. He walked away from the incident, did not seek medical treatment that weekend, needed no stitches and suffered neither broken bones nor permanent injury. When asked how he felt after the robbery, Moses testified:

> MOSES: Terrible. . . . If you got beat up, you'd feel terrible too.
>
> STATE: Did you have some injuries, Mr. Moses?
>
> MOSES: Yes, sir.
>
> STATE: Do you recall what those injuries were?
>
> MOSES: I had some facial injuries, some body injuries where he tried to run me over.

This Court has concluded that more serious injuries fail to establish serious bodily injury. The State has not met its burden in this case.

 ¶ 10 The crux of this error, however, is found in the failure of the trial court to supply the jury with the tools to render a lawful verdict. While there was insufficient evidence adduced at trial to support a verdict of robbery with serious bodily injury, there was ample evidence to convict Owens of robbery. It is for a jury to decide whether that robbery is by threat of serious bodily injury or by force or fear. Notably, the charging document lists the offense charged as robbery in the first degree and details the elements, by force or fear, of robbery in the second degree.[11] The trial court had the

---

8. 25 O.S.2001, § 2.

9. *Minnix v. State*, 1955 OK CR 37, ¶¶ 14–25, 282 P.2d 772, 776–777. In 1957 the aggravated assault statute was amended to reflect "great" rather than "serious" bodily injury, 21 O.S.Supp. 1957, § 64, defining, for the purpose of aggravated assault, "great bodily injury" as: "bone fracture, protracted and obvious disfigurement, protracted loss or impairment of the function of a bodily party, organ or mental faculty, or substantial risk of death." Great bodily injury was seen to be a lower standard than serious bodily injury. *Minnix* at ¶¶ 27–28, 282 P.2d at 777.

10. *Minnix* at ¶¶ 12, 29, 282 P.2d at 775, 777 (finding that victim who suffered a beating with fists over the face and body resulting in the splitting of upper and lower lips that necessitated three layers of stitches in the lips to avoid scarring was not serious bodily injury).

11. The factual language in the charging document was suggestive of second degree robbery:

authority and obligation to provide these instructions to the jury.

▮ ¶ 11 This Court will not look backwards and infer a waiver of proper instructions, supported by the evidence, from a silent record.[12] The State's argument that Owens waived his right to request an instruction on second degree robbery because he raised an alibi defense is not persuasive. This type of formalism defeats the ends of justice and ignores the duty of the court to charge the jury based upon the evidence presented at trial.[13] Because of the sentencing implications of a conviction of second degree rather than first degree robbery,[14] we cannot find the instructional error here harmless.

▮ ¶ 12 We find error also in the trial court's decision to admit evidence of a prior robbery, committed by Owens in 2003, under the common scheme and plan exception to the rule prohibiting the admission of other crimes evidence.[15] This Court reviews the decision of the trial court regarding the admissibility of evidence for an abuse of discretion.[16] "Any doubt as to the admissibility of evidence of other offenses to show a common scheme, plan or unlawful intent should be resolved in favor of the accused and such evidence excluded." [17]

¶ 13 The facts of the prior robbery are as follows: In the evening of September 17, 2003 Owens approached James Maddux in an adult bookstore and asked for a jump start of the battery in his car. Maddux agreed to drive Owens to his car and help. After a twenty minute ride, Owens signaled for Maddux to stop. Maddux exited his vehicle to initiate the jump, and Owens hit Maddux on the head, stole his wallet, and got in the driver seat. Maddux recalled Owens repeatedly telling Maddux to reenter the car, but Maddux refused.

▮ ¶ 14 The State defends the trial court's decision to allow evidence of the prior robbery under the common plan and scheme exception, arguing that the prior robbery is probative evidence of Owen's identity because the two crimes are factually similar. Despite this Court's explanation in *Williams v. State*, the State here continues to confuse and conflate the identity exception (requiring unique similarities between crimes amounting to a signature) and the common plan and scheme exception (requiring a relatedness between the crimes such that the other crime appears to have paved the way for the current offense or the second offense is dependent on the first).[18] The critical distinction is that the common scheme or plan exception does not apply to crimes that are independent of each other; it is necessary that "the

"[O]n or about 6/9/2007, ... [Jeffrey Owens] did commit the crime of Robbery First Degree, a felony, by ... rob[bing] one LEWIS MOSES, by wrongfully taking away certain money ....belonging to LEWIS MOSES ... without his consent and against his will, *said robbery being accomplished by said defendant by means of force and/or fear used against the said Lewis Moses by then and there threatening him and then and there wrongfully taking away the money and personal property aforesaid.*" (emphasis added).

**12.** *Ballard v. State*, 2001 OK CR 20, ¶ 5, 31 P.3d 390, 391.

**13.** *Shrum*, 1999 OK CR 41, ¶¶ 5–6, 991 P.2d at 1036.

**14.** First degree robbery carries a penalty of not less than ten years and is an 85% crime. Second degree robbery carries a penalty not exceeding ten years and is not an 85% crime. *See* 21 O.S.2001, § 798 (first degree robbery); 21 O.S. 2001, § 799 (second degree robbery); 21 O.S.

2003, § 13.1 (minimum sentences—defined crimes).

**15.** 12 O.S.2001, § 2404(b) provides that "[e]vidence of other crimes ... is not admissible ... to show action in conformity therewith." The trial court initially excluded evidence of three prior robberies, including the robbery from 2003, finding the crimes remote and too dissimilar to the current offense. Upon a motion for reconsideration, the court permitted the State to introduce evidence of the 2003 robbery only, under the common plan and scheme exception to 12.-O.S.Supp.2002, § 2404(b).

**16.** *Williams v. State*, 2008 OK CR 19, ¶ 36, 188 P.3d 208, 218 (citation omitted).

**17.** *English v. State*, 1971 OK CR 31, ¶ 5, 480 P.2d 279, 281(citing *Harris v. State*, 1949 OK CR 25, 88 Okla.Crim. 422, 204 P.2d 305, 308).

**18.** *Williams*, 2008 OK CR 19, ¶ 37, 188 P.3d at 219.

commission of one crime facilitated another." [19]

¶ 15 The State has not established facts sufficient to admit the prior robbery under the common scheme or plan exception. Indeed, there is not a scintilla of evidence on the record that the current offense was dependent on or facilitated by the first. Similar, but independent crimes are not admissible.[20] We find that the 2003 robbery is an independent crime, just as the multiple drug sales made by the defendant in *Luna v. State*, to one informant, were independent crimes in a prosecution for dealing to that same informant.[21] Here there were two robberies associated with carjacking, four years apart, different victims, different locations of origin and completion, and different stories used by the perpetrator to effectuate the duplicity.

■■ ¶ 16 This Court has recognized that "[t]he commission of separate offenses characterized by a highly peculiar method of operation will suffice to show a common scheme." [22] This "highly peculiar method" is what the Court recognized in *Williams* as the signature crime going to the identity exception. The State has not adduced evidence supporting this exception either.

Though there is a similarity between the current offense and Owen's prior conviction, there is no unique element in either crime that might be deemed a signature. Using a ruse and/or an appeal for help is one of several garden type varieties of carjacking,[23] a common enough crime in Oklahoma to earn a legislative response in the form of a presumption that defensive action in a carjacking situation is lawful.[24] A perpetrator may initiate a carjacking by force or duplicity. Neither creates a signature. The 2003 robbery is simply too remote and clearly independent of the current crime. Because the 2003 robbery satisfies no exception to the rule excluding other crime evidence, it was error to introduce this evidence at trial.

■■■ ¶ 17 In Proposition Three Owens argues that three instances of prosecutorial misconduct denied him a fair trial. First Owens argues that it was improper for the prosecutor to assert, during his first stage closing argument: "I'm not in the business of prosecuting innocent people." Because no objection to the remarks was made at trial, this Court will review Owen's claim for plain error.[25] Though it is improper for a prosecutor to express his personal convictions about

19. *Id.* The relatedness necessary for the common plan and scheme exception must be so great that it overcomes the prejudicial nature of other crimes evidence. This Court has described such relatedness as "where the crime is committed to prepare the way for another and the commission of the second crime is made to depend upon the perpetration of the first. In that event the second becomes connected and a related transaction and the proof of the commission of the first becomes relevant to show the motive for the perpetration of the second." English, 1971 OK CR 31, ¶ 5, 480 P.2d at 281 (quotation omitted).

20. *Hall v. State*, 1980 OK CR 64, ¶ 5, 615 P.2d 1020, 1022 ("Similarity between crimes, without more, is insufficient to permit admission.... The relationship or connection between crimes must be such that it is possible to infer the existence, in the mind of the accused, of a plan or scheme *with each crime comprising a part thereof.* ...") (emphasis added).

21. *Luna v. State*, 1992 OK CR 26, ¶ 8, 829 P.2d 69, 72 (prior drug sales to undercover officer are separate transactions and not part of a common scheme or plan); *Blades v. State*, 1979 OK CR 147, ¶¶ 13–16, 619 P.2d 875, 878–879 (same). See also *Atnip v. State*, 1977 OK CR 187, ¶ 12,

564 P.2d 660, 663 (Finding trial court erred in admitting evidence of fifteen other burglaries committed by defendant because the State failed to prove that "these crimes were connected in any manner other than that some of the burglaries were committed on the same day. Furthermore, the mere fact that the evidence shows that the crimes were all burglaries allegedly committed by the same three persons is not sufficient to fall within this exception. Mere similarity of the alleged offenses does not, of itself, indicate common scheme or plan.").

22. *Hall*, 1980 OK CR 64, ¶ 5, 615 P.2d at 1022 (citing *Turnbow v. State*, 1969 OK CR 92, 451 P.2d 387 and *Rhine v. State*, 1958 OK CR 110, 336 P.2d 913).

23. *See* United States Department of State, *Carjacking—Don't Be a Victim*, http://www.state.gov/m/ds/rls/rpt/19782.htm# (last visited Oct. 6, 2009).

24. 21 O.S.Supp.2006, § 1289.25 (Physical or Deadly Force Against Intruder).

25. *Hancock v. State*, 2007 OK CR 9, ¶ 101, 155 P.3d 796, 820.

a defendant's guilt,[26] the prosecutor was within the realm of appropriate argument in this case, responding specifically to Owen's allegations that the State initiated the prosecution based upon hunch and suspicion and conducted the investigation in a closed minded, result oriented fashion.

¶ 18 Owens also complains that the prosecutor conducted improper questioning of his alibi witnesses, implying that if the witnesses had contacted the authorities sooner, the outcome of the case might have been different. On cross-examination, the prosecutor questioned each alibi witness extensively about why the witness did not come forward earlier, and why the witness did not go to the police or the press. The questions went to the credibility of the alibi witnesses and were reasonable.[27] Counsel's comparison of this case to *Dupree v. State*,[28] is unavailing. There the prosecutor commented on the failure of defendant's common-law wife to testify at the preliminary hearing. Because two eyewitnesses testified against Dupree at the preliminary hearing, and because the State only had a prima facie burden, the wife's testimony was superfluous at that stage and any argument otherwise was improper. Here, however, especially with inconsistent witness testimony, the timing of the alibi witness statements was relevant. Witness resistance to communicating with the State Investigator is also a fact from which a jury may reasonably draw inferences.

¶ 19 Finally, Owens argues that the prosecutor accused the defense witnesses of lying, while bolstering the testimony of his own witnesses. Specifically, the prosecutor argued that the alibi witnesses were lying when they testified:

I don't know if Ms. Ball and I were thinking on the same wave length this morning or something, but I myself pulled off the definition of manufacture. To invent fictitiously, fabricate, concoct. That's what you saw yesterday afternoon.

Defense counsel's objection to the prosecutor's statements was overruled. The prosecutor also bolstered the statements of his own witness, Moses, stating that he "testified to the best of his ability, and he testified truthfully." These statements were improper, exceeding the bounds of appropriate argument by attacking and bolstering the character and credibility of witnesses.[29] However, "[t]his Court looks at the entire record to determine whether the cumulative effect of improper comments by the prosecutor prejudiced an appellant, thereby constituting plain error"[30] Though the remarks of the prosecutor were not such that would prejudice the verdict considering the record as a whole, they were improper and should not be repeated in a new trial.

¶ 20 In Proposition Four Owens argues that extrinsic evidence was improperly introduced to impeach the credibility of a defense witness, Jamie Jamison. Jamison testified that Owens worked for Jamieson prior to Owens' arrest, and that Owens called Jamison on the morning of the robbery. On cross-examination Jamison stated that he spoke to Owens while Owens was in jail, but Jamison denied that Owens asked Jamison to testify on Owens' behalf. Jamison denied promising that he would say whatever was needed to get Owens back to work. During rebuttal, over defense objection, the prosecution played a recording of a call from the incarcerated Owens to Jamison wherein the following conversation occurred:

Owens: I got that beat. I got arrested July 15th, 2007, some robbery I commit-

**26.** *McCarty v. State*, 1988 OK CR 271, ¶ 13, 765 P.2d 1215, 1220 (citing *Lewis v. State*, 1977 OK CR 287, 569 P.2d 486, 490 and *ABA Standards for Criminal Justice, The Prosecution Function*, § 3–5.8(b) (1980)).

**27.** *Williams*, 2008 OK CR 19, ¶ 64, 188 P.3d at 222.

**28.** *Dupree v. State*, 1973 OK CR 397, ¶¶ 12–13, 514 P.2d 425, 427.

**29.** *See Cobbs v. State*, 1981 OK CR 60, ¶¶ 5–6, 629 P.2d 368, 369; *Scott v. State*, 1988 OK CR 43, ¶¶ 6–7, 751 P.2d 758, 760.

**30.** *Washington v. State*, 1999 OK CR 22, ¶ 41, 989 P.2d 960, 974 (*citing Romano v. State*, 1995 OK CR 74, ¶ 54, 909 P.2d 92, 115).

ted, supposed to have committed on June the 9th, but I got that beat. My lawyer might call you to verify that you picked me up from work and took me home to my mother's. Mr. Jamison [responded] [W]hatever day it is, I'll say I did it, even if I didn't.

■■■ ¶ 21 Owens argued that the extrinsic evidence of a specific act was not relevant to attack the credibility of Jamison. This is true.[31] The evidence, however, goes to establish the bias of Jamison, who was willing to testify to get his employee back to work. "Recognizing that the principles surrounding the introduction of bias evidence derive from the right of confrontation ... this Court has construed this right liberally." [32] Where relevant, and more probative than prejudicial, extrinsic evidence of specific acts of conduct is permitted to show bias of a witness.[33] Allowing this evidence was not an abuse of discretion.[34] This proposition should be denied.

¶ 22 In Proposition Five Owens challenges the trial court's refusal to instruct on the meaning of "reasonable doubt." This Court has repeatedly rejected such claims, and Owens presents no basis to re-examine the issue here.[35] Proposition Six, claiming cumulative error, is moot.

## DECISION

¶ 23 The Judgment and Sentence of the District Court is **REVERSED** and the case **REMANDED** for a new trial. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2009), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

C. JOHNSON, P.J., and A. JOHNSON, V.P.J.: concur.

LUMPKIN and LEWIS, JJ.: concur in part/dissent in part.

LUMPKIN, Judge: concur in part/dissent in part.

¶ 1 I concur in the result reached by the Court but I must take issue with some of the opinion's syntax and analysis.

¶ 2 The opinion fails to apply a long line of case law precedent when it states "the State's argument that Owens waived his right to request an instruction on second degree robbery because he raised an alibi defense is not persuasive. This type of formalism defeats the ends of justice and ignores the duty of the court to charge the jury based on the evidence presented at trial". The problem with this analysis and syntax is that the "formalism" the opinion refers to is the Rule of Law that is the foundation of our legal system. In a long line of cases this Court has held "that a defendant is not entitled to instructions on any lesser included offense when he defends against the charge by proclaiming his innocence." *Gilson v. State*, 2000 OK CR 14, ¶ 119, 8 P.3d 883, 918, and cases cited therein. The defense of alibi is the same as proclaiming innocence in this case. This Court should be strict disciples of the law and not perverters of it. Regardless, because the information charging the crime actually charged robbery by force or fear rather than by serious bodily injury, I agree the instruction should have been given as the primary offense charged in this case.

¶ 3 I also disagree with the opinion's discussion of the other crimes evidence which was admitted pursuant to 12 O.S.2001, § 2404(B). While the opinion cites to *Williams v. State*, 2008 OK CR 19, 188 P.3d

**31.** *Douglas v. State*, 1997 OK CR 79, ¶ 42, 951 P.2d 651, 667 (citing 12 O.S.1991, § 2608(B))(extrinsic evidence may not be used to impeach a witness with specific instances of conduct).

**32.** *Beck v. State*, 1991 OK CR 126, ¶ 11, 824 P.2d 385, 388.

**33.** *Id.* at ¶¶ 12, 15, 824 P.2d at 388–389.

**34.** *Pickens v. State*, 2001 OK CR 3, ¶ 21, 19 P.3d 866, 876 (admissibility of evidence is within the discretion of the trial judge, and reversal war-

ranted only where there is a clear abuse of discretion).

**35.** *See, e.g., Harris v. State*, 2004 OK CR 1, ¶ 51, 84 P.3d 731, 750–51 (affirming trial court's refusal to instruct on meaning of "reasonable doubt" and noting that the Court has "long disapproved of attempts by the trial court to define reasonable doubt for the jury").

208 and quotes a sentence that seems to confirm the opinion's analysis, it disregards the substance of the Court's analysis and decision in *Williams.* The Court actually found the evidence of the prior robbery in *Williams* was admissible § 2404(B) evidence to prove identity. In doing so the opinion pointed out the Court had previously considered this same issue in *Pickens v. State,* 1988 OK CR 35, 751 P.2d 742. In both cases the Court analyzed the methods utilized to commit the robberies. As a part of that analysis the Court stated in *Williams:*

> This Court should not be in the business of weighing the similarities against the dissimilarities. When there are enough similarities between the two crimes to support the trial court's decision, then we must give deference to the trial court's decision. Once that threshold is met, any differences in the two crimes go to the weight of the evidence and not to the admissibility

2008 OK CR 19 ¶ 44, 188 P.3d at 220.

¶ 4 That is what the Court should have done in this case. If that analysis had been done, it would reflect the evidence should have been admitted in that the facts relating to the similarities of the two crimes in this case are the mirror images of the factual analysis in *Williams* and *Pickens.* When the evidence in these three cases is reviewed side by side, there is no reason why the evidence was admissible in the first two cases, but not the present case. An objective analysis can make no reasonable distinction between the admissibility of the evidence in each of the three cases. Trying to make that distinction is like trying to strain a gnat's hair to find a discernable difference. Instead of engaging in that type of verbal gymnastics we should apply the straight forward, common sense approach the Court set out above in *Williams.* I would find the other crimes evidence properly admitted.

LEWIS, Judge, concurs in part, dissents in part:

¶ 1 I agree to granting Appellant relief based on Proposition I. The state presented insufficient evidence of serious bodily injury which is required for first degree robbery.

¶ 2 I dissent to the opinion insofar as it finds that the state has not established facts sufficient to admit the prior robbery under 12 O.S. § 2404(B).